**BAY ELECTRIC SUPPLY, INC., and FAE, Inc.**

v.

**THE TRAVELERS LLOYDS INSURANCE COMPANY.**

**No. CIV. A. G–98–134.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 31, 1999.

Stephen Paul Carrigan, Beckworth and Carrigan, Houston, TX, for Bay Electric Supply.

Stephen Paul Carrigan, Beckworth and Carrigan, Houston, TX, David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for FAE Incorporated.

Michael Patrick Morris, Tekell Book Matthews and Limmer, Houston, TX, for Travelers Lloyds Insurance Company.

## *ORDER*

KENT, District Judge.

In this action, Plaintiffs Bay Electric Supply, Inc. ("Bay"), and FAE, Inc. ("FAE"), sue Defendant The Travelers Lloyds Insurance Company ("Travelers") for breach of contract and a declaratory judgment that Travelers was obligated to defend them in a lawsuit that has now settled. This case is before the Court on Plaintiffs' Motion for Partial Summary Judgment Regarding Defendant's Duty of Defense, and Defendant's Motion · for Summary Judgment. All parties seek a judicial determination as to whether Defendant had a duty, under the terms of certain insurance policies, to defend Plaintiffs in an underlying lawsuit asserting claims for trademark and trade dress infringement. For the . reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** and Defendant's Motion is **DENIED**.

## I. FACTUAL BACKGROUND

FAE and Bay are Texas corporations that sell various electrical products and equipment, including but not limited to circuit breakers. In July 1997, Bay and FAE were sued by a competitor, American

Circuit Breaker Corporation ("ACB"). ACB alleged Bay and FAE had violated federal and state laws prohibiting trademark and trade dress infringement, trademark dilution, and unfair competition. The allegations were based upon the sale by Bay and FAE of circuit breakers bearing trademarks and configurations allegedly identified with and owned by ACB.

Travelers had issued annual general liability insurance contracts, on a Commercial General Liability Coverage Form ("CGL"), covering Bay from the period of April 12, 1995, to April 12, 1998. FAE was added as a named insured effective September 13, 1995. On December 3, 1997, Bay and FAE's insurance broker notified Travelers of the ACB Complaint. Bay and FAE believed the claims against them were covered under provisions of the policy which covered "advertising injury" and "personal injury." Travelers disagreed and denied coverage on January 16, 1998. Counsel for Bay and FAE requested reconsideration of Travelers' decision on March 25, 1998, but Travelers again denied coverage. FAE and Bay subsequently settled the underlying lawsuit.

## II. STANDARD OF ANALYSIS

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such

that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The basis for this Court's jurisdiction is diversity of citizenship of the parties. The Court must therefore look to the substantive law of the State of Texas to determine the law applicable to this action. Texas Art. 21.42, titled "Texas Laws Govern Policies," states in relevant part that: "any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby[.]" *See American Home Assur. v. Safway Steel Prods.,* 743 S.W.2d 693, 697 (Tex.App.—Austin 1987, writ denied) (noting that "[w]e have little difficulty in concluding that Art. 21.42 requires us to apply Texas Law.") Bay and FAE are both Texas corporations with their principal places of business in Texas. It is therefore clear, and the parties do not dispute, that Texas law governs this action.

Under Texas law, an insurer's duty to defend is determined by the factual allegations in the pleadings and the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982). This rule is known as the "Complaint Allegation Rule" or the "Eight Corners Rule." If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141. When the factual allegations of the underlying action are neither clearly within nor clearly without the scope of coverage, "the insurer is obligated to defend if there is potentially a

case under the complaint within the coverage of the policy." *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 451 (Tex.App.— Corpus Christi 1992, writ denied). An insurance company has a duty to defend the entire case so long as the underlying complaint alleges facts constituting at least one cause of action covered by the policy. *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 398 (5th Cir.1995) (applying Texas law).

## III. ANALYSIS

### A. "Misappropriation of Advertising Ideas or Style of Doing Business" Encompasses Trademark and Trade Dress Infringement Claims

The primary issue in this case is whether the allegations in an underlying lawsuit constitute an "advertising injury" which would trigger a duty to defend under a commercial general liability policy. Specifically, whether claims of trademark and trade dress infringement constitute an "advertising injury" under Texas law. Only one Texas case, *Industrial Molding Corp. v. American Mfrs. Mut. Ins. Co.*, 17 F.Supp.2d 633 (N.D.Tex.1998) squarely addresses this issue. That opinion was vacated, however, when the parties agreed to settle. This Court finds the reasoning of the *Industrial Molding* court to be highly persuasive, and, for the reasons stated below, agrees with that court's conclusion that trademark and trade dress infringement are claims covered under "advertising injury." The Court will therefore not reach Plaintiffs other alleged bases for coverage.

In relevant part, the Travelers policy provided coverage to Bay and FAE for: " 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services[.]'" "Advertising injury" is defined under the poli-cy as an "injury arising out of one or more of the following offenses:

(a) Oral or written publication material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(b) Oral or written publication material that violates a person's right of privacy;

(c) Misappropriation of advertising ideas or style of doing business; or

(d) Infringement of copyright, title or slogan."

■ In order for Bay and FAE to prove their case for coverage under the policy for an "advertising injury," the following three elements must be proved: (1) the allegations in the underlying complaint must raise a "potential" for liability under one of the covered offenses stated in the policy; (2) Bay and FAE must have engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred; and (3) there must be a causal connection between the alleged injury and the "advertising activity." *See Sentex Sys., Inc. v. Hartford Accident & Indem. Co.*, 882 F.Supp. 930, 936 (C.D.Cal.1995) (citing *New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*, 847 F.Supp. 1452, 1455 (N.D.Cal.1994); *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489, 497–98 (N.D.Cal.1993)); *see also Sentry Ins. v. R.J. Weber Co., Inc.*, 2 F.3d 554, 556–57 (5th Cir.1993).

### 1. Covered Offense

■ With respect to the first prong of the *Sentex* test, Bay and FAE argue that trademark and trade dress infringement are covered under the offense of "[m]isappropriation of advertising ideas or style of doing business." They contend that the physical appearance of a product—the ornamental features which serve to identify its source and distinguish it from similar products—can reasonably be construed as either an "advertising idea" or a "style of

doing business." They contend that trademark and trade dress fit this definition and serve this function. Accordingly, they allege that ACB's allegations of infringement of its product's physical appearance, or trade dress[1] and trademark, were covered under the Travelers' policy which provided insurance coverage for "misappropriation of advertising ideas or a style of doing business." Numerous courts throughout the country have agreed with Plaintiffs that coverage for trademark and trade dress infringement claims is provided under the "advertising injury" offense of "misappropriation or style of doing business." *See Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 1996 WL 389266 (S.D.N.Y. July 10, 1996) (finding coverage where Plaintiff duplicated the "unique appearance" of jewelry); *Applied Bolting Technology Prods., Inc. v. United States Fidelity & Guar. Co.*, 942 F.Supp. 1029, 1034 (E.D.Pa.1996), *aff'd*, 118 F.3d 1574 (3d Cir.1997); *Ben Berger & Son, Inc. v. American Motorist Ins. Co.*, 1995 WL 386560 (S.D.N.Y. June 29, 1995); *American Economy Ins. Co. v. Reboans, Inc.*, 900 F.Supp. 1246, 1254–55 (N.D.Cal.1994) ("Reboans II"); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424, 1994 WL 118029 (4th Cir.1994); *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.*, 818 F.Supp. 553, 557 (W.D.N.Y. 1993), *vacated pursuant to settlement*, 153 F.R.D. 36 (W.D.N.Y.1994); *Lebas Fashion Imports of U.S.A. v. ITT Hartford Ins. Group*, 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36 (1996); *Dogloo, Inc. v. Northern Ins.*

*Co. of New York*, 907 F.Supp. 1383, 1390 (C.D.Cal.1995); *Poof Toy Products, Inc. v. United States Fidelity & Guar. Co.*, 891 F.Supp. 1228, 1233 (E.D.Mich.1995).

Travelers contends, on the other hand, that lack of an express reference to trade dress or trademark infringement in the policy indicates that coverage is not provided. For support, Travelers cites a series of cases which hold that patent infringement does not fall within "advertising injury" coverage. The Court concludes, however, that such cases, dealing with patents rather than trademark or trade dress, are inapposite especially in light of the substantial authority cited by Plaintiffs specifically addressing trademark and trade dress infringement claims. Travelers does rely heavily on one case which is directly on point, *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir.1996), decided by the United States Court of Appeals for the Sixth Circuit. There the Court concluded that "misappropriation of advertising ideas or style of doing business" refers only to offenses falling under the common-law tort of misappropriation. The Court reasoned: "[t]here has been, and perhaps continues to be, a body of law which gives meaning to the term 'misappropriation of advertising ideas or style of doing business,' and which renders the term unambiguous, as referring to a category of actionable conduct separate from trademark and trade dress infringement." *Advance Watch*, 99 F.3d at 802. The Court went on to state that: " 'misappropriation of advertising ideas or

1. While the term trademark is commonly understood, "trade dress" is a more technical term and refers to "the total image of a product ... including features such as shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983). Trade dress is most frequently used to indicate the packaging or labeling of goods, but the design of the product itself may also constitute protectable trade dress. *Id.* Trade dress is protected under section 43(a) of the Lanham Act, which pro-

hibits any person from using a term, name, symbol or device, or any combination thereof, which is likely to confuse, mistake or deceive as to the manufacturer, origin or description of a good or service. 15 U.S.C. § 1125. Protection of trade dress serves to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

style of doing business' ... refer[s] to the unauthorized taking or use of interest other than those which are eligible for protection under statutory or common-law trademark." *Id.* at 803.

■ This Court respectfully disagrees with the Sixth Circuit and concludes, as did the court in *Industrial Molding* that the insurance policy at issue "[does] not limit [Travelers] liability to suits arising under the common law tort of misappropriation. 'If the drafters of this insurance policy wanted to limit their exposure to 'suits arising under the common law tort of misappropriation,' ... it would have been a simple matter to do so.'" *Industrial Molding Corp. v. American Mfrs. Mut. Ins. Co.,* 17 F.Supp.2d 633, 638 (N.D.Tex. 1998) (citing *Union Ins. Co. v. Knife,* 897 F.Supp. 1213, 1216 (W.D.Ark.1995)). *See also* Richard L. Antognini, *Why Neither Side Has Won Yet: Recent Trends in Advertising Injury Coverage,* 65 DEF. COUNS. J. 18, 21–22 (1998) (discussing analytical weakness of *Advance Watch*). Further, under Texas law, the Court is to look to the understanding of the average insured, and the Court does not believe that the average insured is required to know the obscure distinctions between common law business torts; instead the burden to identify such distinctions and incorporate them into the policy should fall upon the insurer.

■ Under Texas law, the Court must ascribe to policy terms their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co. of Pittsburgh,* 99 F.3d 695, 700 (5th Cir.1996) (citing *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979)). Moreover, policy ambiguities are to be resolved in favor of the insured. *Union Ins. Co. v. Knife Co.,* 897 F.Supp. 1213, 1214 (W.D.Ark.1995). In the instant case, the phrases "advertising ideas" and "style of doing business" are not defined under the Travelers' policy.

In light of the disagreement among courts and scholars as to the meaning of these terms, they can only be said to be ambiguous. Bay and FAE propose an objectively reasonable interpretation of the policy language that has been accepted by several courts. Under Texas law, the Court is required to adopt the objectively reasonable interpretation most favorable to the insured. *American States Ins. Co. of Texas v. Arnold,* 930 S.W.2d 196, 200 (Tex. App.—Dallas 1996) (citing *Nationwide Property & Cas. Ins. Co. v. McFarland,* 887 S.W.2d 487, 492 (Tex.App.—Dallas 1994), writ denied). Accordingly, the Court agrees with Plaintiffs that misappropriation of advertising ideas or style of doing business encompasses claims for trademark and trade dress infringement.

Further support for the Court's conclusion is found in the drafting history of the standard ISO CGL form, the type of form used here. Until 1986, the standard ISO CGL form included "unfair competition" as a covered class of advertising injuries, and explicitly excluded injuries resulting from trademark, service mark, and trade name infringement. In 1986, ISO revised the standard form: unfair competition was eliminated in favor of misappropriation of advertising ideas and style of doing business, and the trademark, service mark and trade name exclusion was eliminated. Thus, a policyholder over time could reasonably infer that claims related to trade dress would not be excluded from a CGL policy, based upon the 1986 revision of the standard form.

Regardless of the Court's conclusion that "advertising injury" coverage includes trademark and trade dress claims, Travelers argues that ACB's complaint alleges only limited infringement of ACB's products, which does not fall within the comprehensive term "style of doing business." Instead, Travelers asserts that only a wholesale copying of all of a company's products falls within the scope of this term. Essentially then, Travelers urges the Court to create categories separating

trade dress infringement claims according to the "extensiveness" of the infringement alleged. Such categories would be wholly artificial and impossible to apply in a consistent fashion from case to case, and the Court declines Travelers' invitation to do so. An examination of the underlying Complaint in the instant action, in which it is unclear what portion of ACB's products and ideas Bay and FAE copied, demonstrates the difficulty that a court would constantly encounter in trying to ascertain from a complaint the precise extent of the alleged infringement.

### 2. Advertising Injury

Having concluded that under the Travelers' policy "misappropriation of advertising ideas or style of doing business" includes trade dress and trademark infringement, the Court now turns to the second prong of the *Sentex* test: whether. Bay and FAE engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred. Bay and FAE claim that the conduct alleged in the complaint of the underlying lawsuit constitutes "advertising activities" which would bring Bay and FAE's conduct within coverage of the policy. Travelers disputes this, and claims that the complaint did not allege any "advertising injury."

The insurance policy at issue does not define the term "advertising." Under Texas law, if the term of an insurance policy is susceptible to more than one reasonable interpretation, courts must resolve the uncertainty by adopting the construction that most favors the insured. *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). Because the policy does not define "advertising," the term must also be given its plain and ordinary meaning. *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977).

▪ The Texas Supreme Court has adopted a very broad definition of advertising. *Smith v. Baldwin*, 611 S.W.2d 611, 614–15 (Tex.1980). In *Smith*, the court

cited to the definition of advertising contained in Black's Law Dictionary 54 (6th ed.1990): "[t]o advise, to announce, to apprise, to command, to give notice of, inform, to make known, publish. [To] call a matter to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business...." Black's Law Dictionary further defines "advertisement" and cites a Texas case for its definition: "Notice given in a manner designed to attract public attention." *See Edwards v. Lubbock County*, 33 S.W.2d 482, 484 (Tex.Civ. App.—Amarillo 1930, no writ). ACB complained of Bay and FAE's "importation, *marketing* and/or sale of circuit breakers bearing the infringing reproduction of the Configuration Marks and/or which bear or are packaged with infringing reproductions of the trademark STAB–LOK ... constitutes the use of false designations of origin ... which is likely to confuse or deceive the public as the source, sponsorship and/or approval of Defendants' circuit breakers." Applying the Texas Supreme Court's broad definition of advertising together with ACB's allegations, specifically that Bay and FAE marketed infringing reproductions to deceive the public as to source, there is no doubt that ACB's complaint accused Bay and FAE of engaging in unlawful advertising activity.

Travelers argues, however, that no advertising activity occurred because, according to information obtained as part of discovery, Bay and FAE's marketing consisted primarily of mailing or faxing price sheets to customers. This approach neglects to follow Texas law which requires the Court to look only to the eight corner of the complaint. Looking solely to the underlying complaint, Bay and FAE have successfully shown that the allegations of the underlying complaint aver an "advertising injury."

### 3. Causal Nexus

The Court now turns to the third prong of the *Sentex* test: whether Bay and

FAE's advertising activities were causally related to the underlying lawsuit's trade dress infringement claims. Bay and FAE must prove that the alleged injury occurred in the course of Bay and FAE's advertising ideas or activity. *Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554 (5th Cir. 1993).

In the instant case, Bay and FAE have established the nexus which entitles them to a defense under the advertising injury section of the policy. ACB specifically alleged "importation, marketing, and/or sale of circuit breakers bearing the infringing reproductions of the Configuration Marks and/or which bear or are packaged with infringing reproductions of the trademark STAB–LOK ... constitutes the use of false designations of origin ... which is likely to confuse or deceive the public as the source, sponsorship and/or approval of Defendants' circuit breakers." In essence, Bay and FAE were accused of trading on the goodwill of ACB by marketing and selling knock-off circuit breakers, thereby injuring ACB. The causal nexus, based upon allegations in ACB's Complaint, is therefore met.

*B. No Policy Exclusions Operate to Bar Coverage*

 Travelers next argues that regardless of the Court's finding that the conduct alleged by ACB falls within the policy's provision for advertising injury coverage, the "knowledge of falsity exclusion" bars coverage. Under Texas law, an insurer bears the burden of proving that an exclusion applies to bar coverage. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996). Further, under Texas law, the Court must adopt the construction of an exclusionary clause urged by the insured so long as it is not unreasonable. *McKay v. State Farm Mut. Auto. Ins. Co.*, 933 F.Supp. 635, 638–39 (S.D.Tex.1995); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991).

 The policy excludes coverage for "advertising injury" "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." As Plaintiffs point out, however, knowledge is not a requirement for a finding of liability in the underlying action. The conduct alleged by ACB could have been found merely negligent or reckless and yet still actionable. *Palmer v. Truck Ins. Exch.*, 78 Cal. Rptr.2d 389 (Cal.Ct.App.1998) (coverage for trademark infringement not barred as liability for trademark infringement need not be based on willful conduct); *see also Elcom Technologies v. Hartford Ins. Co. of the Midwest*, 991 F.Supp. 1294 (D.Utah 1997) (rejecting "knowledge of falsity exclusion argument where the underlying case involved false advertising claims"); *Union Ins. Co. v. Knife Co.*, 897 F.Supp. 1213 (W.D.Ark.1995) (intent is not a required element of trademark infringement thus liability can be found even where the infringement was innocent rather than willful). Accordingly, Travelers has failed to carry its heavy burden of demonstrating that the "knowledge of falsity" exclusion bars coverage.

 Travelers next asserts that coverage for the underlying action is barred by the "prior publication" exclusion in the Travelers policy. That exclusion bars coverage for "advertising injury" that arises out of "oral or written publication of material whose first publication took place before the beginning of the policy period". While Bay was covered under the policy prior to the inception of sale of the allegedly infringing circuit breakers in August, 1995, FAE, who Travelers alleges is the real party in interest, was not covered under the policy until September 13, 1995, at least one month after FAE began selling the allegedly infringing circuit breakers.

Travelers argument fails for at least two reasons highlighted by Plaintiffs. First, no cause of action against Bay or FAE arose until ACB registered its trademarks in 1997, well after the inception of Traveler's coverage for FAE. The Lanham Act

§ 32(1), 15 U.S.C. § 1114(1), specifically requires that suit be brought by the "registrant." *See P.J. Noyes v. American Motorists Ins. Co.*, 855 F.Supp. 492 (D.N.H. 1994). Second, it is not clear from the Complaint that Bay Electric is sued solely as the "alter ego" of FAE and not as an entity itself entitled to coverage. ACB directed several of its allegations of infringement against "Defendants," and the Court must look only to the face of the Complaint.

*C. Alleged Late Notice of ACB's Claim Does Not Bar Coverage*

■■■■■ The final defense asserted by Travelers is that summary judgment for Plaintiffs is precluded by a factual issue as to late notice. The policy at issue obligated Plaintiffs to notify Travelers "as soon as practicable" in the event of any claim or suit. Travelers claims that Plaintiffs had notice of the underlying action in July, 1997, but did not notify Travelers until December 1997. As Plaintiffs point out, however, the purpose of the notice provision is "to enable an insurer to investigate the circumstances of [a claim or suit] while the matter is fresh in the minds of the witnesses so that it may adequately prepare to adjust or defend any claims that may be then or thereafter asserted against the persons covered by its policy." *Employers Cas. Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 575 (Tex.1972). Under Texas law, an insurer cannot avoid its contractual obligations based merely upon a delay in notice unless it can affirmatively prove it has been prejudiced by the delay. *Hanson Production Co. v. Americas Ins. Co.*, 108 F.3d 627 (5th Cir.1997); *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17 (S.D.Tex.1995). Travelers denial of coverage was not premised on late notice, but rather on its review of ACB's Complaint and its conclusion that the claims brought against Bay and FAE did not fall within the policy coverage. Thus, regardless of the timing of notice, Travelers would have denied coverage and was therefore not prejudiced by the timing of Plaintiffs' notice. Where, as here, the insurer would not have adjusted or defended the action regardless of the timing of notice there is no reason to require a forfeiture of coverage merely upon a technicality.

## IV. CONCLUSION

Because there was potentially a case in the underlying complaint within the coverage of the policy, Travelers had a duty to defend Bay and FAE. Accordingly, for the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment on Defendant's Duty of Defense is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**. Travelers has adduced no competent summary judgment evidence which refutes Bay and FAE's proof that they were entitled to defense by Travelers. It is therefore **ORDERED** that the parties file nothing further regarding the issues addressed in this Order, including motions to reconsider and the like, unless supported by *compelling* new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled, on any matter herein addressed, from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

Furthermore, Plaintiffs are **ORDERED** to submit a motion detailing all relief to which they feel they are entitled including expenses, pre-judgment interest, and attorney's fees along with supporting documentation in accordance with the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Plaintiffs must submit the motion and a proposed Final Judgment within forty (40) days of the date of this Order. Defendant will have twenty (20) days to respond. The Court will then resolve all outstanding claims for damages and issue a Final Judgment.

**IT IS SO ORDERED.**