ADOLFO HOUSE DISTRIBUTING CORP., d/b/a Adolfo's House, Adolfo Perez Jr. and Adolfo Perez Sr., Plaintiffs,

v.

TRAVELERS PROPERTY AND CASUALTY INSURANCE CO., Defendants.

No. 000708CIV.

United States District Court, S.D. Florida.

July 7, 2001.

Stephen Michael Gaffigan, Esq., Shepherd Finkelman & Graffigan, Miami, for Plaintiff.

Thomas Albert Boyd, Jr., Esq., Sullivan Boyd & Goldsberry, Jacksonville, William T. Corbett, Jr., Esq., Melissa H. Raksa, Esq., Drinker, Biddle & Shanley, Florham Park, NJ, Francis A. Anania, Esq., Anania, Bandklayder, Blackwell & Baumgarten, Miami, for Defendant.

## FINAL SUMMARY JUDGMENT

HURLEY, District Judge.

In the lead action styled above, plaintiffs Adolfo House Distributing Corp. d/b/a/ Adolfo's House ("Adolfo House"), Adolfo Perez, Jr. ("Perez Jr.") and Adolfo Perez, Sr. ("Perez Sr.") (collectively "the insureds") sue Travelers Property and Casualty Insurance Company ("Travelers") for a declaratory judgment that Travelers was obligated to defend them in a lawsuit that has now been settled. The case is now before the court on the parties' cross motions for summary judgment, including plaintiffs' motion for summary judgment against Travelers [DE# 37] and Traveler's motion for summary judgment against plaintiffs [DE# 31].

All parties seek a judicial determination as to whether Travelers had a duty to defend and indemnify plaintiffs in an underlying lawsuit asserting claims for, *inter*

*alia,* trademark and trade dress infringement. For reasons set forth below, plaintiffs' motion for summary judgment shall be granted, and defendant's motion for summary judgment denied.

## I. Factual Background

In October, 1999, Razac Products Co., Inc. ("Razac") sued Adolfo House and the Perezes, along with various other entities, alleging that Adolfo House violated federal and state laws prohibiting trademark and trade dress infringement, trademark dilution, and unfair competition by advertising for sale and distribution hair care products and hand lotions bearing certain trademarks allegedly identified with and owned by Razac.

Travelers issued a Commercial General Liability ("CGL") Policy, No. Y660–446–N532A–TIL–99 ("the policy"), to Adolfo House which was in effect between July 12, 1999 through July 12, 2000. Immediately upon service of the Razac complaint, the insureds tendered the claim to Travelers for a defense. Travelers declined coverage and denied defense of the claim by letter dated January 7, 2000. This lawsuit ensued.

Thus, on February 23, 2000, the insureds filed suit in this court seeking a declaration of coverage and determination of damages allegedly resulting from Travelers' wrongful refusal to defend and indemnify it against the Razac claim. During the pendency of this suit, the insureds settled the underlying claim with Razac for payment of monetary and non-monetary damages, including forfeiture of allegedly infringing beauty products to Razac.

## II. Standard of Analysis

■ This case is before the court under exercise of its diversity jurisdiction. Therefore, the court must look to the Florida's choice of law rules to determine the law applicable to this action. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1515 (11th Cir.1997); *Bituminous*

*Casualty Corp. v. Advanced Adhesive Technology, Inc.,* 73 F.3d 335, 337 (11th Cir.1996). Under Florida's choice of law rules, interpretation of insurance contracts governing mobile risks is traditionally governed by the law of the place of making, which is generally considered to be the place where the policy is delivered. *Sturiano v. Brooks,* 523 So.2d 1126 (Fla.1988); *Bloch v. Berkshire Ins. Co.,* 585 So.2d 1137 (Fla. 3d DCA 1991). In this case, the contract for business liability insurance was issued in Florida to a Florida policy holder, and the insured's business is physically located in Florida. It is therefore clear, and the parties do not dispute, that Florida law governs interpretation of the policy.

■ In Florida, as in other jurisdictions, an insurer's duty to defend hinges on whether the allegations of the complaint state a claim which potentially falls within the coverages defined by the policy. This question is resolved strictly by reference to the allegations of the underlying complaint, not by the actual facts, the insured's version of the facts or the insurer's defenses. Within these confines, the central inquiry is whether the allegations "fairly and potentially" bring the transaction within the coverage provisions of the policy. *Trizec Properties, Inc. v. Biltmore Construction Co.,* 767 F.2d 810, 811 (11th Cir.1985); *State Farm Fire & Cas. Co. v. Higgins,* 788 So.2d 992 (Fla. 4th DCA 2001). Thus, it is said that the duty to defend is broader than the duty to indemnify, in the sense that the insurer must defend even if the facts alleged are actually untrue, or the legal theories unsound. *Id.*

■ Where there is any doubt as to whether the duty to defend exists in a particular case, this question must be resolved against the insurer and in favor of the insured. *See Marr Investments, Inc. v. Greco,* 621 So.2d 447, 449 (Fla. 4th DCA

1993); *Baron Oil Co. v. Nationwide Mutual Fire Ins.,* 470 So.2d 810 (Fla. 1st DCA 1985). Moreover, where multiple claims are lodged, some within and some outside coverage, the insurer is obligated to defend the entire case so long as the underlying complaint alleges facts constituting at least one cause of action covered by the policy. *Lime Tree Village Community Club v. State Farm General Insurance Co.,* 980 F.2d 1402 (11th Cir.1993); *Sunshine Birds & Supplies, Inc. v. U.S. Fidelity & Guaranty Co.,* 696 So.2d 907 (Fla. 3d DCA 1997); *Klaesen Bros., Inc. v. Harbor Ins. Co.,* 410 So.2d 611 (Fla. 4th DCA 1982).

In laying the allegations of the complaint against the terms of the policy in determining the potential for coverage, the interpretational analysis begins with the basic legal principle in Florida that insurance contracts are to be construed in accordance with the plain language of the policies as bargained for by the parties, with any ambiguities interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29 (Fla.2000); *Siegle v. Progressive Consumers Ins. Co.,* — So.2d —, 2001 WL 456531 (Fla. 4th DCA, opinion filed May 2, 2001). If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, an ambiguity is deemed to exist by definition and the court is bound to adopt the interpretation which favors coverage. *Anderson, supra.*

Florida law is equally well-settled that insuring or coverage clauses are to be construed in the broadest possible manner to effect the greatest extent of coverage. *See Westmoreland v. Lumbermens Mutual Casualty Co.,* 704 So.2d 176 (Fla. 4th DCA 1997), and cases cited *infra.* On the other hand, insurance policy exclusions are construed in the narrowest possible manner, again with an eye toward maximizing the coverages afforded. *See Anderson, supra; Demshar v. AAACon Auto Transport, Inc.,* 337 So.2d 963, 965 (Fla.1976); *Blue Cross and Blue Shield of Florida, Inc. v. Steck,* 778 So.2d 374 (Fla. 2d DCA 2001); *St. Paul Fire & Marine Ins. Co. v. Thomas,* 273 So.2d 117 (Fla. 4th DCA), *cert. den.,* 282 So.2d 638 (Fla.1973)(espousing well settled and almost universally accepted principle of construing exclusion in a manner which affords the broadest possible coverage). More generally, in interpreting an insurance policy in accordance with these precepts, Florida law requires the court to look at the policy as a whole, and to give meaning to all of its terms. *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 941 (Fla.1979).

### III. The Policy

The insuring agreement and exclusionary passages pertinent to the present discussion are set forth in the policy at Section 1, "Coverages," Sub–Section B, "Personal and Advertising Injury Liability" as follows:

### Coverage B. Personal and Advertising Injury Liability

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages cause of "personal injury" or "advertising injury" to which this insurance applies. . . .

. . . . .

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. "Personal injury" or advertising injury':

(1) arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity;

(2) arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) arising out of the willful violation of penal statute or ordinance committed by or with the consent of the insured; or

(4) for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

The term "advertising injury," in turn, is defined at Section V "Definitions" as follows:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a per-

son's or organization's goods, proc or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan

### IV. Analysis

The primary issue in this case is whether the allegations in the underlying Razac lawsuit constitute an "advertising injury" within the meaning of the policy which trigger a duty to defend on the part of Travelers. As the Florida Supreme Court has not yet had occasion to construe the insurance term "advertising injury" as it is defined in the standard CGL policy form, the court approaches this question as one of first impression to be determined under application of established general precepts of policy construction in place in this State.

#### A. Duty to Defend

**1. Coverage of trademark and trade dress infringement claims as "Misappropriation of Advertising Ideas or Style of Doing Business"**

Plaintiffs allege that Razac's allegation of infringement of its product's physical appearance, or trade dress [1] and trademark are covered under the policy definition of "advertising injury," subsumed, at Section V. 1(c) of the policy, as a "misappropriation of advertising ideas or a style of doing business." There is substantial case support for this interpreta-

---

1. "Trade dress" is a technical term that refers to "the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983). Trade dress is most frequently used to indicate the packaging or labeling of goods, but the design of the prod-

uct itself may also constitute protectable trade dress. *Id.* Trade dress is protected under section 43(a) of the Lanham Act, which prohibits any person from using a term, name, symbol or device, or any combination thereof, which is likely to confuse, mistake or deceive as to the manufacturer, origin or description of a good or service. 15 U.S.C. § 1125.

tion, premised on reasoning that the phrase "style of doing business" is synonymous with the concept of "trade dress." *See American Employers' Ins. Co. v. De-Lorme Publishing Co., Inc.* 39 F.Supp.2d 64 (D.Me.1999); *Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F.Supp.2d 611 (S.D.Tex.1999); *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 1996 WL 389266 (S.D.N.Y. July 10, 1996); *Ben Berger & Son, Inc. v. American Motorist Ins. Co.*, 1995 WL 386560 (S.D. N.Y. June 29, 1995); *Poof Toy Products, Inc. v. United States Fidelity & Guar. Co.* 891 F.Supp. 1228, 1233 (E.D.Mich.1995); *Dogloo, Inc. v. Northern Ins. Co.*, 907 F.Supp. 1383 (C.D.Cal.1995); *Lebas Fashion Imports of U.S.A. v. ITT Hartford Ins. Group.*, 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36 (Cal. App.2d 1995); *American Economy Ins. Co. v. Reboans, Inc.* 900 F.Supp. 1246, 1254–55 (N.D.Cal.1994).

In urging a contrary view, Travelers relies primarily on *Gencor Industries Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560 (M.D.Fla.1994), divining Florida law, on the issue of whether *patent* infringement claims may be encompassed as "advertising injury" and *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir.1996), applying Michigan law, on the issue of whether *trademark* or trade dress infringement claims fall under this definition. For reasons expressed below, the court does not consider either *Gencor* or *Advance Watch* persuasive here, instead finding the analytical approach there fashioned to be directly at odds with established Florida precepts governing interpretation of insurance polices.

In *Gencor*, the court held that the "advertising injury" definition contained in the standard CGL policy is not broad enough to include a claim of *patent* infringement on the rationale, as a matter of "basic common sense", that the word "patent"

should have appeared in the specific "infringement clause" (referencing copyright, title or slogan infringement set out at sub-paragraph 1.d of the definition of "advertising injury" if it were intended to be covered as such.) Because it is not found there, the court thought it illogical to suggest that patent infringement claims might then be implicitly included as a "misappropriation" of another's "style of doing business" under sub-paragraph 1.c. *Gencor* at 1563. The court does not find *Gencor* persuasive here, however, because, in addition to the deficiencies with its doctrinal approach, discussed in greater detail, *infra*, it is inapposite in that it examines the question of coverage over patent infringement, an offense which has been found not to fit as easily under the CGL concept of "style of doing business" as well as that of "trade dress" infringement. *See e.g. Owens–Brockway Glass Container, Inc. v. International Ins. Co.* 884 F.Supp. 363, 369 (E.D.Cal.1995), *aff'd* 94 F.3d 652, 1996 WL 445082 (9th Cir.1996); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va. 1993), *aff'd* 21 F.3d 424, 1994 WL 118029 (4th Cir.1994).

Although *Advance Watch* speaks directly to the point of CGL coverage for trademark and trade dress infringement claims under the "misappropriation" sub-part of the policy definition of "advertising injury," its reasoning is likewise rejected here as entirely inconsistent with established precepts of Florida insurance policy construction. In *Advance Watch*, the Sixth Circuit concluded that "misappropriation of advertising ideas or style of doing business" refers only to offenses falling under the common law tort of misappropriation, which, as a legal term of art, is a category of actionable conduct separate from trademark and trade dress infringement. 99 F.3d at 802. In reversing the district court on this point, it reasoned that "the district court's broad reading of 'misappro-

priation of advertising ideas or style of business' to include a reference to trademark or trade dress infringement would therefore expand the sense of 'advertising injury' to include non-verbal conduct—a result difficult to rationalize in light of the ordinary meaning of advertising." *Id.* at 803.

The Court is puzzled as to why the concept of "advertising" might not logically embrace non-verbal conduct, graphic or symbolic communication. As the term is commonly understood, "advertising" simply means the "action of calling something to the attention of the public." Webster's Collegiate Dictionary (9th ed.1983). *See also* Black's Law Dictionary (7th ed.1999)(defining advertising as "the action of drawing the public's attention to something to promote its sale"). Under a broad interpretation, then, a product's label might be considered "advertising," as could its packaging. Indeed, some courts have found that passing off, trademark, trade name or trade dress infringement claims implicitly involve advertising activity, because such claims necessarily involve use of the mark to identify and promote the insured's goods or services to a substantial number of people. *See Dogloo, Inc. v. Northern Ins. Co.* 907 F.Supp. 1383, 1391 (C.D.Cal.1995); *American Employers' Ins. Co. v. DeLorme Publishing Co.,*

39 F.Supp.2d 64, 76 (D.Me.1999). Viewed another way, one reasonable interpretation of "advertising ideas" and "style of doing business" concepts, which are not defined under the policy, is that they encompass the physical appearance of a product—the ornamental features that distinguish it from similar products and identify its source. Because trademark and trade dress serve this function, the concept of "advertising idea" or "style of doing business" may reasonably be interpreted to include these types of claims.

This court therefore concludes that allegations of trademark or trade dress infringement meet the CGL "advertising injury" definition of "advertising injury" under the definition sub-part for "misappropriation of advertising ideas or style of doing business," and that the contrary rule of *Advance Watch* adopting a restrictive gloss on the concept of "misappropriation" conflicts with the basic rules of insurance contract interpretation followed in this state and in multiple other jurisdictions. *Advance Watch* has not been without its critics for this reason,[2] and this court respectfully disagrees with it as an anomaly in the trend under the law.

To adopt its reasoning here[3] would do violence to principles of liability

**2.** The Sixth Circuit's analysis of "advertising injury" in *Advance Watch* "has been sharply criticized for ignoring the real contours of intellectual property litigation." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.* 193 F.3d 742, 747 (3d Cir.1999). *See also Am. States Ins. Co. v. Hayes Specialties, Inc.,* 1998 WL 1740968, at *3 (Mich.Cir.Ct.1998)("the analysis and reasoning of the Sixth Circuit is not only unpersuasive and flawed, but demonstrates a lamentable lack of understanding and grasp of the law of trademark/trade dress, and ultimately lead[sic] to an unduly narrow holding and somewhat bizarre and tortured application of Michigan insurance law."); *Richard L. Antognini, Why Neither*

*Side Has Won Yet: Recent Trends in Advertising Injury Coverage,* 65 Def. Couns. J. 18, 21–22 (1998)(discussing analytical weakness of *Advance Watch* ). *But see Callas Enters. v. Travelers Idem. Co.,* 193 F.3d 952, 956 (8th Cir.1999)(following *Advance Watch* in an alternative holding).

**3.** Even accepting the common law definition of "misappropriation" as one reasonable interpretation of the plain meaning of "misappropriation ... of style of doing business," it is at least equally reasonable to find that it could mean the wrongful taking of the way another does business or promotes its products, e.g. through infringement of trade dress.

insurance policy construction well established under Florida law, which start with the basic premise that terms of an insurance contract must be given their plain, ordinary and generally accepted meanings viewed from the perspective of the average person, *Union American Ins. Co. v. Maynard,* 752 So.2d 1266 (Fla. 4th DCA 2000); *Mason v. Florida Sheriffs' Self–Insurance Fund,* 699 So.2d 268 (Fla. 5th DCA 1997), with insuring language given its broadest possible sweep and exclusionary language the narrowest possible reach.

If Travelers wanted to limit its exposure for "misappropriation" to suits arising under the common law tort of misappropriation, it was incumbent upon it to do so unambiguously. This would have been a simple enough matter had it wished to do so, either by use of limiting language in structuring the contours of the insuring clause, or by insertion of a specific exclusion for trademark or trade dress claims.[4] Having failed to do so, it cannot now ask the court to re-write the policy for it under the guise of policy construction.

Accordingly, the court concludes that "misappropriation" within the meaning of the CGL "advertising injury" definition encompasses claims of trademark and trade dress infringement, and that the underlying Razac complaint in this case states a claim which is "fairly and potentially" within this coverage provision of the policy.

### 2. Connection with Advertising Injury

■ Having concluded that "misappropriation of advertising ideas or style of doing business" includes trade dress and trademark infringement, the court now must determine whether the alleged trade dress infringement was "caused by an offense committed in the course of advertising [Adolfo House's] goods, products or services..." within the meaning of the policy insuring clause. [Section 1, Coverage B. 1.b.(2).] In seeking to defeat this causal element on the face of the Razac complaint. Travelers contends that any injury suffered by Razac arising out of the trademark infringement arose not from Adolfo's *advertising* of knockoff products, but instead from the *sale* of the counterfeit products.

There is no record support for this proposition. To the contrary, the underlying Razac complaint alleges that Adolfo House, and others, misappropriated and traded on the reputation and good will of Razac through "conduct *in advertising and promoting* their product in a manner which states or reasonably implies that [Adolfo house's] product is the real Razac or affiliate of Razac," and consequently "caused and is likely to continue to cause confusion, mistake and deception as to the affiliation, connection or association of [Adolfo House] with Razac." (emphasis added)

---

Given two reasonable interpretations of policy language, the law in Florida requires the court to accept the interpretation which provides the most coverage, *see Lindheimer v. St. Paul Fire & Marine Ins. Co.,* 643 So.2d 636 (Fla. 3d DCA 1994), *rev. den.* 651 So.2d 1194 (Fla.1995) thus compelling a conclusion of potential coverage under any view of this term.

4. Of significant historical note, it has been observed that, prior to 1986, the standard form ISO CGL form included "unfair competition" as a covered class of advertising injuries, and explicitly *excluded* injuries resulting

from trademark, service mark and trade name infringement. *Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co.,* 61 F.Supp.2d 611, 617 (S.D.Tex.1999). In 1986, the Insurance Service Office ("ISO") the entity that publishes standard forms widely used in the property and casualty insurance industry, revised the form to replace "unfair competition" with the phrase "misappropriation of advertising ideas and style of doing business," while *eliminating* the trademark, service mark and trade name exclusion, thus implying that claims related to trade dress would be included under the 1986 revision. *Id.*

Essentially, Razac accuses Adolfo House of trading on the good will of Razac by marketing and selling knock-off Razac products, thereby injuring Razac. In order to cause the alleged consumer confusion, Adolfo House would have had to call attention to the appearance or trade dress of its hand lotions and beauty products. Therefore, the trade dress infringement may be said to have been caused by Adolfo House's advertising of its products using the infringing trade dress. The requisite causal nexus, based upon the allegations in Razac's complaint is met here. *See Bay Electric Supply*, 61 F.Supp.2d at 618.

### 3. Exclusions

■ Under Florida law, a policy exclusion operates to relieve the insurer from the obligation to defend a claim only where it is facially applicable to the allegations of the underlying complaint. *See e.g. Reliance Ins. Co. v. Royal Motorcar Corp.*, 534 So.2d 922 (Fla. 4th DCA 1988). In this case, Travelers attempts to invoke the "knowledge of falsity" or "prior publication" policy exclusions for this purpose as an alternative vehicle by which to circumvent its obligation to defend in the event the conduct alleged in the underlying complaint is deemed to fall within the policy coverage for "advertising injury."

### a. "knowledge of falsity"

■ The policy excludes coverage for "advertising injury" "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Policy, Section I.B.2.(a)(1). Travelers contends that this exclusion applies because Razac alleged that Adolfo House sold its hair care and hand lotion products with intent to deceive its customers, knowing that the representation of the products' origin through design and trade dress was false.

It is questionable in the first instance as to whether this exclusion applies to all advertising injuries, or only to libel, slander, and invasion of privacy; it has been suggested that this exclusion is more logically relevant to the latter. *See e.g. Interface Inc. v. Standard Fire Ins. Co.*, 2000 WL 33194955 (N.D.Ga.2000); *Elcom Technologies v. Hartford Ins. Co. of the Midwest*, 991 F.Supp. 1294 (D.Utah 1997)(rejecting "knowledge of falsity exclusion" argument where underlying case involved false advertising claims); *Union Ins. Co. v. Knife Co., Inc.* 897 F.Supp. 1213, 1217 (W.D.Ark.1995). Even if the exclusion were broadly interpreted to apply to trade dress or trademark infringement claims, this would not render it applicable here as an absolute coverage bar. As the insureds point out, despite the fact that some of the underlying suits' allegations are intentional in nature, the Razac suit also asserted non-intentional grounds for relief. In such circumstances, where the complaint's allegations leave open the possibility that Adolfo House might be liable for unintentional acts of trade dress infringement, it may be said that the complaint contains allegations which "fairly and potentially bring the case" within the policy coverage, thus requiring the insurer to defend the entire claim. *Lime Tree Village Community Club Ass'n, Inc. vs State Farm Gen. Ins. Co.* 980 F.2d 1402 (11th Cir.1993). As a result, Travelers was not relieved of its duty to defend based on the allegations of willfulness in Razac's complaint.

### b. "prior publication"

■ Travelers next asserts that is relieved of a duty to defend by the "prior publication" exclusion in the Travelers policy. That exclusion bars coverage for "advertising injury" that arises out of "oral or written publication of material whose first publication took place before the beginning of the policy period." Travelers argues this exclusion bars coverage because Adolfo House first began passing off Razac

products and identifying them in its catalogs since at least 1998, well prior to the issuance of the subject policy in July 1999.

The complaint itself does not provide dates as to when Adolfo House began advertising and promoting the infringing products through print or other advertising media. It does allege the fact of infringing conduct based on controlled "buys" of knockoff Razac products from the insureds' main location and warehouse in Miami, which are alleged to have occurred at intervals between May 1999 (prior to policy inception date) through October 1999 (post policy inception date), to wit, May 14, 1999, June 28, 1999, October 12, 1999, October 19, 1999. Plainly, then, on its face the underlying complaint alleges some "advertising injury" which occurred within the policy effective dates, thus triggering a duty to defend on the part of Travelers. *See e.g. Platinum technology, inc. v. Federal Ins. Co.,* 2000 WL 875881 (N.D.Ill.2000)(where no allegations of complaint could be construed as alleging that infringing trademarks were first published prior to policy period, "first publication" exclusion did not preclude coverage).

That it alleges some infringing activity which occurred prior to the inception date does not alter this result under the "prior publication" exclusion, which the court finds inapplicable to this case. This exclusion, which refers to "oral and written publication," mimics the coverage provisions of the policy that relate to advertising injury involving libel, slander, and invasion of privacy. The clear implication from the syntax employed in these phrases is that the exclusionary provision merely limits the coverage for advertising injury that arises from those three particular torts. In other words, because the prior acts exclusion expressly applies only to an "oral and written 'publication,'" it is effective as to sub-parts (1) and (2) of the

advertising injury definition, which contain that phrase, but is not effective as to sub-part (3) of the definition governing "misappropriation" offenses, which does not contain that clause.

The court acknowledges the existence of a split of authority on whether the "first publication" exclusion applies to all advertising injuries or only to slander, libel and invasion of privacy. *Compare Irons Home Builders Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260, 1265 (E.D.Mich.1993)(applying Florida law)(exclusion applies only to advertising injury resulting from slander libel or invasion of privacy, such that insurer owed duty to defend against allegation of copyright infringement even though the first alleged act occurred prior the policy period) *with Applied Bolting Technology Products, Inc. v. United States Fidelity & Guaranty Co.* 942 F.Supp. 1029, 1037 (E.D.Pa.1996)(expressly disagreeing with *Irons Home* and finding that under its plain meaning, "first publication" exclusion extended to all four sub-parts of "advertising injury" as defined in the policy, not just two sub-parts that mimic the language of the exclusion). At the very least, this conflict and lack of any controlling in-circuit authority suggests that the language is capable of two reasonable interpretations, and hence, is by definition ambiguous, requiring that it be interpreted against the insurer and in favor of coverage.

Thus, examining all of the provisions of the policy as a whole, the court finds that the "first publication" exclusion invoked by Travelers does not apply in this case. Given the duplicate language of the provision, it is a reasonable construction that it only applies to libel, slander and invasion of privacy, not to trademark or trade dress infringement. *See Irons Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260 (E.D.Mich.1993).[5]

**5.** Even if the exclusion were more broadly    interpreted to apply to "misappropriation"

### 4. Conclusion

As it is apparent that the underlying Razac complaint alleges facts within the "advertising injury" coverage, and does not contain allegations bringing the claim within the "knowledge of falsity" or "prior publication" exclusions, the court concludes that Travelers had a clearcut duty to defend its insureds against the Razac claim, and that it wrongfully breached this duty by failing to tender a defense of it to its insureds.

### B. Duty to Indemnify

■ An insurer's duty to indemnify is ordinarily determined by analyzing the policy coverages based on the actual facts of the underlying case. *See e.g. Hagen v. Aetna Cas. & Surety Co.,* 675 So.2d 963, 965 (Fla. 5th DCA), *rev den.* 683 So.2d 483 (Fla.1996). This is true even where the insurer wrongfully refuses to defend its insured, and the insured takes control of case and settles it as he is then authorized to do, *see MCO Environmental Inc. v. Agricultural Excess & Surplus Ins. Co.,* 689 So.2d 1114 (Fla. 3d DCA 1997), as it is said that an unjustified failure to defend does not require an insurer to pay a settlement if no coverage exists. *Steil v. Florida Physicians' Insurance Reciprocal,* 448 So.2d 589 (Fla. 2d DCA 1984)(third party indemnification claim).

There is some question in this context, however, as to whether an insurer may be estopped from raising coverage defense that were necessarily determined in

the underlying action and judgment, *see Spencer v. Assurance Co.,* 39 F.3d 1146, 1149 (11th Cir.1994) (Florida law)(dicta); *cf. Colonial Oil Industries v. Underwriters Subscribing to Policy Nos.,* 106 F.3d 960 (11th Cir.1997)(deferring to Georgia Supreme Court on issue of whether complete estoppel precludes carrier from raising coverage defenses after wrongful failure to defend), although there is no Florida Supreme Court authority indicating whether estoppel principles might be extended here to preclude litigation of issues which either were, or were not, necessarily determined in a judgment issued by a previous court at the conclusion of a contested trial on liability or following settlement.

The court will therefore assume in the context of this specific case that Travelers retains the right to contest coverage based on the actual facts, and that the insured, as the party claiming coverage, has the burden to show that the settlement, or portions thereof, represent costs that fall within the coverage provisions of the liability policy. *See Keller Industries Inc. v. Employers Mutual Liability Ins. Co. of Wisconsin,* 429 So.2d 779 (Fla. 3d DCA 1983).

The settlement agreement between Razac and the insureds in this case generally refers to the alleged infringement of trademarks alleged in the Razac suit, suggesting that both the trade dress and infringement claims were settled by the

---

type advertising injuries, under which the trade dress and trade infringement claims implicated here are deemed to fall, this would not alter the result on the duty to defend issue because there is a question raised as to whether the advertising injury activity which occurred during the policy term involved simple republication of pre-policy inception activity, or instead was merely "similar" to it in theme or content. Conduct which is merely similar is deemed insufficient to trigger this exclusion. *See International Communication*

*Materials, Inc. v. Employer's Ins. of Wausau,* 1996 WL 1044552 (W.D.Pa.1996). The underlying complaint here does not contain any allegations which even speak to this issue, nor do the evidentiary proffers of the parties which exceed the allegations of the complaint in this summary judgment proceeding lend to a conclusive determination of either identicalness or similarity. At best then for Travelers under this view, the application of the exclusion is only a possibility, such that its duty to defend continues.

agreement. Nothing in the record suggests otherwise. Based on the record presented, the court may therefore assume that the insureds' liability is premised on both claims as they are alleged in the underlying Razac complaint.

Since the court has determined that these claims as alleged are covered claims under the insuring agreement of the policy and that the exclusions invoked by Travelers have no application here as a matter of law, the court concludes that Travelers is obligated to indemnify its insureds for the amount which they contributed to the Razac settlement.

### V.  Conclusion

Based on the record presented for summary judgment, the court finds that Travelers had a duty under the policy to defend the insureds in the underlying Razac lawsuit and is obligated to reimburse the insureds for the costs of the defense which they independently assumed in consequence of Travelers' wrongful failure to do so. It is also obligated to indemnify its insureds for all liability arising out of their settlement of the Razac trade dress and trade infringements claims. The parties have previously stipulated to these damages pending this court's resolution of the policy interpretation questions posed [DE # 55], and the court will now enter summary judgment accordingly. It is therefore

**ORDERED AND ADJUDGED:**

1. Plaintiff Adolfo House, Adolfo Perez Sr. and Adolfo Perez Jr.'s motion for summary judgment on the duty to defend and indemnify [DE# 37] is **GRANTED**, and defendant Travelers' motion for summary judgment on these issues [DE# 31] is **DENIED**.

2. **FINAL SUMMARY DECLARATORY JUDGMENT** is herewith entered in favor of Plaintiffs Adolfo House, Adolfo Perez, Sr. and Adolfo Perez Jr. and against Travelers Property and Casualty Insurance Company with the following declarations of policy coverage and damage determinations:

a. Defendant Travelers Property and Casualty Insurance Company owed a duty to defend and indemnify its insureds, Adolfo House, Adolfo Perez, Sr. and Adolfo Perez Jr., in the underlying Razac suit;

b. Defendant Travelers Property and Casualty Insurance Company breached its duty to defend and indemnify its insureds in the underlying Razac lawsuit and the insureds were damaged as a consequence of that breach;

c. The insureds, Adolfo House, Adolfo Perez, Sr. and Adolfo Perez Jr. shall recover damages from Travelers Property and Casualty Insurance Company in the sum of $23,239.00, representing reasonable defense costs incurred in connection with their defense of the underlying Razac action, together with the sum of $26,000.00, representing the liability incurred by the insureds for their portion of the settlement of the underlying Razac claim, for a total of $49,239.00, at which interest shall accrue at the rate prescribed by 28 U.S.C. § 1961, for which let execution issue.

d. The court reserves jurisdiction to tax attorneys fees and costs incurred by the insureds in the prosecution of this action against Travelers pursuant to § 627.428, Florida Statutes.