INDUSTRIAL MOLDING
CORPORATION,
Plaintiff,

v.

AMERICAN MANUFACTURERS
MUTUAL INSURANCE
COMPANY, Defendant.

No. CIV. A. 5:97–CV–300–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Sept. 16, 1998.

Dennis R. Burrows, McCleskey, Harriger, Brazill & Graf, Lubbock, TX, for Plaintiff.

Michael Lee Byrd, Gorsuch & Byrd, Lubbock, TX, for Defendant.

## ORDER

CUMMINGS, District Judge.

On this day the Court considered Plaintiff, Industrial Molding Corporation's ("IMC") Motion for Partial Summary Judgment, filed May 29, 1998. On June 18, 1998, Defendant, American Manufacturers Mutual Insurance Company ("American Manufacturers"), filed a Response to IMC's Motion. IMC filed a Reply to American Manufacturers' Response on July 1, 1998. Also before the Court is American Manufacturers' Motion for Summary Judgment, filed May 29, 1998. On June 17, 1998, IMC filed a Response to American Manufacturers' Motion for Summary Judgment. American Manufacturers then filed a Reply to IMC's Response on July 2, 1998. After considering all relevant arguments and evidence, the Court grants IMC's Motion for Partial Summary Judgment and denies American Manufacturers' Motion for Summary Judgment.

## I.

### BACKGROUND

This is an insurance coverage case. The central issue is whether the facts alleged in an underlying lawsuit constitute an "advertising injury" which would trigger a duty to defend under a commercial general liability policy. More specifically, the issue is whether claims of trade dress infringement constitute an "advertising injury" under Texas law. This narrow issue is one of apparent first impression.

American Manufacturers issued a commercial general liability ("CGL") policy to IMC in November of 1995. In April of 1996, IMC was sued in Ohio for trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1996). *County Line Limited, L .L.C. v. Gary Products Group, Inc. and Industrial Molding Corporation,* No. 1:96–CV–727 (N.D.Ohio) (the "underlying suit"). Thereafter, IMC made a claim for coverage under its policy with American Manufacturers. In October of 1996, American Manufacturers denied coverage to IMC. IMC then requested that American Manufacturers reconsider its position. Thereafter, in January of 1997, American Manufacturers

again denied coverage under the policy. IMC subsequently settled the underlying lawsuit.

IMC then filed this declaratory judgment action against American Manufacturers, seeking a determination of whether American Manufacturers had a duty to defend IMC in the underlying suit. IMC also asserts claims of breach of contract, deceptive trade practices, unfair insurance practices, and breach of the duty of good faith and fair dealing.

The CGL policy which was issued to IMC provided for the following coverage:

1. Insuring Agreement:

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claims or "suit" that may result. . . .

 b. This insurance applies to: . . .

 (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

 but only if the offense was committed in the "coverage territory" during the policy period.

## SECTION V DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

 a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

 b. Oral or written publication of material that violates a person's right of privacy;

 c. Misappropriation of advertising ideas or style of doing business; or

 d. Infringement of copyright, title or slogan.

IMC contends that the plaintiff's complaint in the underlying lawsuit alleged a cause of action for trade dress infringement, which constituted an "advertising injury," thus triggering American Manufacturers' duty to defend. Specifically, IMC contends that the underlying lawsuit alleged facts which amount to a "misappropriation of advertising ideas or style of doing business." In its Motion for Partial Summary Judgment, IMC moves the Court to declare that American Manufacturers had a duty to defend IMC under the policy. American Manufacturers, in its Motion for Summary Judgment, argues it is entitled to judgment against all claims made by IMC in its Complaint. Both the parties and the Court agree that there are no questions of fact to be decided, only questions of law.

## II.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. FED. R.CIV.P. 56(e); *Matsushita Elec. Indus. Corp. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated asser-

tions, and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

## III.

## ANALYSIS

### A.

"Except in matters governed by federal law, when as here a federal court's jurisdiction is predicated upon diversity of citizenship of the parties, the federal court must apply the substantive law of the state in which it is sitting." *Maryland Cas. Co. v. Williams,* 377 F.2d 389, 392 (5th Cir.1967) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In a diversity case, if the court is required to construe an insurance contract, the court will apply applicable state law. *Griffin v. McCoach,* 313 U.S. 498, 503, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941). Likewise, federal courts sitting in diversity are governed by the conflict-of-laws rules of the courts of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under Texas law, the law of the state with the most significant relationship to the substantive issue in question is to be applied. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). While the underlying lawsuit was filed in Ohio, the policy in question was sold to a Texas corporation through a Texas agent. The insurance policy covered activities principally centered in the state of Texas. Therefore, because Texas has the most significant relationship to and interest in the resolution of this case, Texas law will apply.

### B.

Under Texas law, when determining whether an insurance company has a duty to defend its insured, courts adhere to the "Complaint Allegation Rule," also known as the "Eight Corners Rule." That rule states that an insurer's duty to defend is deter-

mined by the allegations in the pleadings and the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Id.*

The focus of a coverage analysis is based upon the factual allegations in the complaint, and not on the legal theories asserted. *National Union,* 939 S.W.2d at 141; *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.— Dallas 1992, writ denied). When the factual allegations of the underlying action are neither clearly within nor clearly without the scope of coverage, "the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965); *International Serv. Ins. Co. v. Boll,* 392 S.W.2d 158, 160 (Tex.Civ.App.— Houston 1965, writ ref'd n.r.e.); *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983). "Potential" coverage exists whenever the allegations in the underlying petition allow for introduction of evidence on a theory of recovery within the scope of the policy. *Terra Int'l,* 829 S.W.2d at 271.

Absent assertions by the carrier of exclusions of coverage under the policy, the burden is on the insured to show that the claim is potentially within the policy coverage. *Employers Casualty Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988) (*overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996)); *American Fidelity & Cas. Co. v. Traders & General Ins. Co.,* 160 Tex. 554, 334 S.W.2d 772, 775–76 (1959); *Data Specialties, Inc. v. Transcontinental Ins. Co.,* 125 F.3d 909, 911 (5th Cir.1997). However, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Heyden Newport,* 387 S.W.2d at 26 (quoting C.T. Drechsler, Annotation, *Allegations in third person's action*

*against insured as determining liability insurer's duty to defend,* 50 A.L.R.2d 458, 504 (1956)).

### C.

Texas law is far from clear on this issue. In support of its argument, Plaintiff cites *Two Pesos, Inc. v. Gulf Insurance Co.,* 901 S.W.2d 495 (Tex.App.—Houston [14th Dist.] 1995, no writ), for the proposition that Texas law implicitly recognizes insurance coverage for trade dress infringement claims arising out of an "advertising injury." However, the court in *Two Pesos* did not squarely address that issue. In that case, the defendant did not even contest the plaintiff's argument that trade dress infringement fell within the policy's definition of an "advertising injury." The central issue decided in *Two Pesos* was whether the underlying lawsuit alleged an offense committed during the policy period. *Id.* at 500. From the court's discussion, IMC argues that the court tacitly assumed that trade dress infringement fell within the "advertising injury" clause. However, because the issue of trade dress infringement constituting an "advertising injury" was not directly decided by the court, this Court will not accept such a tenuous assumption, and finds that *Two Pesos* is not dispositive of this issue.

Plaintiff also points to the case of *Cigna Lloyds Insurance Co. v. Bradley's Electric, Inc.,* No. 13–95–524–CV, 1998 WL 518186(Tex.App.—Corpus Christi, May 14, 1998). In that case, the district court ruled in favor of the insured in finding a duty to defend on claims of inducement and patent infringement made in the underlying litigation. This ruling was subsequently appealed. However, in the opinion on motion for rehearing, the court of appeals reversed and remanded the district court's ruling, discussing only venue considerations. *Id.* at *3–4. Therefore, *Bradley's Electric* is equally unavailing in deciding this issue. Thus, having found no Texas case law which answers the issue, the Court is left to resolve the question as the Texas Supreme Court would, under Texas law. *See Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir.1995) (holding that when highest court of state has not decided particular issue of substantive law, federal court faced with this issue in diversity must make an *"Erie* guess" as to how highest court would rule).

### D.

■ In order for IMC to prove its case for coverage under the policy for an "advertising injury," the following three elements must be proved: (1) The allegations in the underlying complaint must raise a "potential" for liability under one of the covered offenses stated in the policy; (2) IMC must have engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred; and (3) there must be a causal connection between the alleged injury and the "advertising activity." *Sentex Sys., Inc. v. Hartford Accident & Indem. Co.,* 882 F.Supp. 930, 936 (C.D.Cal.1995) (citing *New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.,* 847 F.Supp. 1452, 1455 (N.D.Cal.1994); *New Hampshire Ins. Co. v. Foxfire, Inc.,* 820 F.Supp. 489, 497–98 (N.D.Cal.1993)). *See also Sentry Ins. v. R.J. Weber Co., Inc.,* 2 F.3d 554, 556–57 (5th Cir.1993).

■ In examining the first prong of the *Sentex* test, the Court must determine whether trade dress infringement is a covered offense under the policy. " 'Trade dress' involves the total image of a product and may include features such as shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980 (11th Cir.1983). Trade dress is most frequently used to indicate the packaging or labeling of goods, but the design of the product itself may also constitute protectable trade dress. *Id.* Trade dress is protected under section 43(a) of the Lanham Act, which prohibits any person from using a term, name, symbol or device, or any combination thereof, which is likely to confuse, mistake or deceive as to the manufacturer, origin or description of a good or service. 15 U.S.C. § 1125 (1996). Protection of trade dress serves to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos, Inc. v.*

*Taco Cabana, Inc.*, 505 U.S. 763, 774, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

IMC contends that American Manufacturers' "advertising injury" coverage for "misappropriation of advertising ideas or style of doing business" reasonably encompasses the allegations in the underlying lawsuit of trade dress infringement. If that is true, then there would be a duty to defend on behalf of American Manufacturers. The phrase "style of doing business," as it appears in the insurance policy in question, is not defined. Most courts agree that the phrase "style of doing business" refers to the manner in which a business is operated, rather than the substance of the business itself, and equate "style of doing business" to the concept of trade dress protected under the Lanham Act. *See Applied Bolting Tech. Prods., Inc. v. United States Fidelity & Guar. Co.*, 942 F.Supp. 1029, 1034 (E.D.Pa.1996), *aff'd*, 118 F.3d 1574 (3d Cir.1997); *Dogloo, Inc. v. Northern Ins. Co. of N.Y.*, 907 F.Supp. 1383, 1389–90 (C.D.Cal.1995); *American Econ. Ins. Co. v. Reboans, Inc.*, 900 F.Supp. 1246, 1254–55 (N.D.Cal.1994) ("*Reboans II*"); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir.1994); *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.*, 818 F.Supp. 553, 557 (W.D.N.Y.1993), *vacated pursuant to settlement*, 153 F.R.D. 36 (W.D.N.Y.1994);

American Manufacturers argues that the phrase "misappropriation of advertising ideas or style of doing business" refers only to the common law tort of "misappropriation," and would therefore not trigger a duty to defend under the facts of the underlying lawsuit. However, it is relevant to note that the insurance policy in question, a 1986 standard CGL form, did not limit American Manufacturers' liability to suits arising under the common law tort of misappropriation. "If the drafters of this insurance policy wanted to limit their exposure to 'suits arising under the common law tort of misappropriation,' ... it would have been a simple matter to do so." *Union Ins. Co. v. Knife Co.*, 897 F.Supp. 1213, 1216 (W.D.Ark.1995).

Until 1986, the standard ISO CGL form included "unfair competition" as a covered class of advertising injuries, and explicitly excluded injuries resulting from trademark, service mark, and trade name infringement. In 1986, ISO revised the standard form: unfair competition was eliminated in favor of misappropriation of advertising ideas and style of doing business, and the trademark, service mark and trade name exclusion was eliminated.

*Id.* at 1216–17 (quoting *American Econ. Ins. Co. v. Reboans, Inc.*, 852 F.Supp. 875, 882 (N.D.Cal.1994) ("*Reboans I*")). Thus, a policyholder over time could reasonably infer that claims related to trade dress would not be excluded from a CGL policy, based upon the 1986 revision of the standard form.

As the phrase "style of doing business" is not defined under the policy, that term must therefore be construed in accordance with IMC's objectively reasonable expectations, taking into account the context of the policy as a whole and the ordinary and popular sense of the words in that phrase. *Reboans II*, 900 F.Supp. at 1254. The phrase "style of doing business," taken in its ordinary and popular sense, would embrace coverage for trade dress infringement, given that "style of doing business" has been held by a clear majority of courts to embrace trade dress. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir.1994). Analyzing the phrase "style of doing business" in light of an insured's reasonable expectations and knowledge of majority law on the issue is the most equitable resolution, due to the reality that insurance contracts are contracts of adhesion, and courts have developed special rules of construction for insurance policies, the most important of which is the rule that policy ambiguities are to be resolved in favor of the insured. *Knife Co.*, 897 F.Supp. at 1214. This more modern approach of looking to an insured's reasonable expectations has been adopted by a majority of jurisdictions considering the issue. *See Reboans II*, 900 F.Supp. at 1254; *Poof Toy Prods., Inc. v. United States Fidelity & Guar. Co.*, 891 F.Supp. 1228, 1233 (E.D.Mich.1995); *Dogloo*, 907 F.Supp. at 1389.

The great exception to this trend is the Sixth Circuit's holding in *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir.1996). In that case, the court, applying Michigan law, refused to find that a "misappropriation of advertising ideas or style of doing business" included trademark or trade dress infringement. American Manufacturers relied upon *Advance Watch* in denying coverage to IMC. The court in *Advance Watch* reasoned that because the policy at issue never mentioned the word "trademark," the policy should not cover trademark or trade dress infringement. *Id.* at 802. The Sixth Circuit reversed the district court, which held that "misappropriation of advertising ideas or style of doing business" referred to trade dress infringement. In reversing the district court, the Sixth Circuit reasoned that

> the district court's broad reading of "misappropriation of advertising ideas or style of doing business" to include a reference to trademark or trade dress infringement would therefore expand the sense of "advertising injury" to include non-verbal conduct—a result difficult to rationalize in light of the ordinary meaning of "advertising."

*Id.* at 803.

The Sixth Circuit's conclusion that "advertising injury" only includes verbal conduct flies in the face of common sense and experience with advertising. Because product advertisement frequently highlights only the trade dress of a product, together with little or no additional verbal conduct, the idea that an "advertising injury" can only occur with verbal conduct is unreasonable, and for that reason, the Sixth Circuit's holding in *Advance Watch* has been widely criticized. *See generally* Richard L. Antognini, *Why Neither Side Has Won Yet: Recent Trends in Advertising Injury Coverage*, 65 DEF. COUNS. J. 18, 21–22 (1998) (discussing analytical weakness of *Advance Watch*). With such flawed reasoning, *Advance Watch* is the minority opinion on the issue; therefore, this Court will not rely upon it to resolve this case.

**E.**

■ Having concluded that under the policy "misappropriation of advertising ideas or style of doing business" includes trade dress infringement, the Court now considers the second prong of the prima facie test: whether IMC engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred. IMC claims that the conduct alleged in the complaint of the underlying lawsuit constitutes "advertising activities," which would bring IMC's conduct within coverage of the policy. American Manufacturers disputes this and claims that the complaint did not allege any "advertising injury." IMC's insurance policy with American Manufacturers does not define the term "advertising" under Texas law. If the term of an insurance policy is susceptible to more than one reasonable interpretation, courts must resolve the uncertainty by adopting the construction that most favors the insured. *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). Because the policy does not define "advertising," the term must also be given its plain and ordinary meaning. *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). A commonly accepted legal dictionary defines "advertise" as follows:

> To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business . . . .

BLACK'S LAW DICTIONARY 54 (6th ed.1990). Black's Law Dictionary further defines "advertisement" and cites a Texas case for its definition: "Notice given in a manner designed to attract public attention." *Id.* (citing *Edwards v. Lubbock Co.*, 33 S.W.2d 482, 484 (Tex.Civ.App.—Amarillo 1930, no writ)).

■ Applying the above standards to the terms in question together with the facts averred in the underlying complaint, there is no doubt that the complaint accused IMC of engaging in unlawful advertising activity. Therefore, IMC has successfully shown that

the allegations of the underlying complaint aver an "advertising injury."

### F.

 Having concluded that the underlying complaint alleged an "advertising injury," the Court now turns to the third prong of the prima facie test: whether IMC's advertising activities were causally related to the underlying lawsuit's trade dress infringement claims. In order to establish a duty to defend, IMC must prove that the alleged injury occurred in the course of IMC's advertising ideas or activity. In the case of *Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554 (5th Cir.1993), the Fifth Circuit, applying Texas law, recognized the requirement that the insured must establish a nexus between the claims in the underlying lawsuit and the insured's advertising activity. In *Weber*, the insured sought coverage for copyright infringement under the advertising coverage section of its CGL policy. The court found that the claims were part of the enumerated offenses constituting an "advertising injury." However, because the insured failed to show "any connection" between the underlying lawsuit's claims and Weber's advertising injury, the court found no basis for coverage. *Id.* at 557.

In the instant case, however, IMC has established that nexus which entitles it to a defense under the advertising injury section of the policy.[1] Not only was misappropriation of trade dress alleged in the underlying complaint, the required nexus between the advertising activities and damages alleged by

County Line also proved the necessary causal nexus.

### G.

American Manufacturers also moves for summary judgment against IMC's claims under article 21.21 of the Texas Insurance Code and under the Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Vernon 1998). However, because genuine issues of material fact exist regarding those causes of action, American Manufacturers' Motion for Summary Judgment as to those claims is denied.

### H.

 American Manufacturers, in its Reply to IMC's Response to American Manufacturer's Motion for Summary Judgment, "objects to and urges to strike" an opinion letter by Michael S. Quinn, an attorney specializing in insurance coverage matters writing on behalf of IMC. American Manufacturers contends that the letter is improper summary judgment evidence because it is an unsworn document, *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987), and because it contains unsubstantiated assertions, *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir.1996) (en banc). The Court treats this pretrial "objection" as a motion to strike under Fed. R. Civ. P. 12(f). Although Mr. Quinn's letter was not considered by the

---

1. The underlying complaint alleged that:

 1. "[IMC] ... **introduced** a prototype Christmas tree stand product for vertical positioning of a tree during February, 1996, **at the Ameri–Christmas Show** in New Orleans, Louisiana."

 2. "By selling and **marketing** such Christmas tree stands, ... IMC [is] infringing County Line's trade dress in the Swivel Straight stand, and [is] intentionally trading upon the goodwill and customer recognition in County Line's brand image for their Swivel Straight stand."

 3. "IMC [is] attempting to avoid design, development, **marketing** and **advertising** costs by copying County Line's Swivel Straight stand and improperly and intentionally trading upon County Line's goodwill and secondary meaning in that product."

 4. "Defendants ... intended to copy County Line's distinctive trade dress."

5. "By manufacturing, **marketing**, and selling its christmas [sic] tree stand, Defendants have misappropriated County Line's trade dress in its Swivel Straight stand product. Defendants' acts *falsely represent* that their Christmas tree stand *is* affiliated, connected or associated with County Line, and **tend to describe falsely** that Defendants' goods emanate from or are sponsored or approved by County Line. **Defendants' acts are likely to cause consumer confusion.**"

 In the underlying complaint, County Line specifically prayed that IMC be enjoined and restrained from "using in manufacturing, **advertising, marketing** or sales" the Christmas tree stand in question, and in reference to the various allegations of the complaint further sought damages in the form of "all profits realized by reason of its unlawful acts as set forth in this complaint." (emphasis added).

Court in resolving these Motions, the motion is well taken and accordingly is granted.

## IV.

## CONCLUSION

Because there was potentially a case in the underlying complaint within the coverage of the policy, American Manufacturers therefore had a duty to defend IMC. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965). Accordingly, IMC's Motion for Partial Summary Judgment is **GRANTED**. Therefore, American Manufacturers' Motion for Summary Judgment on the same issue is **DENIED**, together with its Motion for Summary Judgment on IMC's state law causes of action. All relief not expressly granted is denied.

SO ORDERED.