CINCINNATI INSURANCE
COMPANIES,
Plaintiff,

v.

PESTCO, INC., a Pennsylvania Corporation d/b/a/ Air–Scent International, a Pennsylvania Corporation, Defendant.

No. CIV.A. 02–1204.

United States District Court,
W.D. Pennsylvania.

March 22, 2004.

Peter B. Skeel, Esq., Summers, McDonnell, Walsh & Skeel, Pittsburgh, PA, for Plaintiff.

George L. Stewart II, Esq., Traci Sands Rea, Esq., Reed Smith LLP, Pittsburgh, PA, for Defendant.

## OPINION

DIAMOND, District Judge.

Plaintiff, Cincinnati Insurance Companies ("Cincinnati"), commenced this declaratory judgment action seeking a declaration that it has no duty to defend or indemnify defendant Pestco, Inc. ("Pestco") under two Cincinnati insurance policies, a commercial general liability policy (the "CGL Policy") and an umbrella liability policy (the "Umbrella Policy"), in connection with the lawsuit captioned *California Scents, Inc. v. Pestco, Inc., et al.,* No. SA CV 99–0009 GLT (ANx) in the United States District Court for the Central District of California (the "Underlying Lawsuit"). In the Underlying Lawsuit, California Scents has asserted claims against Pestco for trade dress infringement, unfair competition under federal law and under California law and false advertising. Pestco answered Cincinnati's declaratory judgment complaint and asserted a counterclaim against Cincinnati for breach of contract, claiming that Cincinnati breached its duty to defend and failed to pay some of the bills submitted by Pestco in connection with the Underlying Lawsuit.

Pestco also asserted a counterclaim for a declaratory judgment that Cincinnati is obligated to defend Pestco in the Underlying Lawsuit.

Presently before the court is Cincinnati's motion for summary judgment (Document No. 10) and Pestco's motion for partial summary judgment (Document No. 15). Cincinnati argues that it has no duty to defend or indemnify Pestco for a number of reasons. First, Cincinnati asserts that Pestco's conduct, as alleged in the Underlying Lawsuit, does not constitute "advertising injury" or "advertising liability" as defined in the CGL Policy and the Umbrella Policy, respectively. Second, Cincinnati contends that the first publication exclusion in the CGL Policy precludes coverage because the alleged "advertising injury" arose out of an oral or written publication that first took place before the beginning of the policy period. Next, Cincinnati maintains that the "known loss doctrine" relieves Cincinnati of its defense and indemnity obligations because the alleged "advertising injury" occurred prior to the CGL and the Umbrella Policy periods. Finally, Cincinnati argues that the false advertising claim is an excluded act under the terms of both the CGL Policy and the Umbrella Policy.

Pestco, on the other hand, argues that its motion for partial summary judgment[1] should be granted because Cincinnati has a duty to defend Pestco in the Underlying Lawsuit. According to Pestco, the claims asserted by California Scents in the Underlying Lawsuit constitute "advertising injury" and "advertising liability" within the meaning of the respective Policies.

Beyond that, Pestco asserts that the first publication exclusion is inapplicable in this case, and that the known loss doctrine does not afford a basis for terminating Cincinnati's defense obligations. Finally, Pestco argues that the issue of Cincinnati's duty to indemnify is not ripe for adjudication because the Underlying Lawsuit has not resulted in the imposition of any liability on Pestco vis-a-vis California Scents.

For the following reasons, Pestco's motion for partial summary judgment will be granted and Cincinnati's motion for summary judgment will be denied.[2]

### Standard of Review

Federal Rule of Civil Procedure 56(©) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to the party's claim and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *gen-*

---

1. Procedurally, Pestco filed a memorandum in opposition to Cincinnati's motion for summary judgment ("Pestco's Opposition Memorandum") (Document No. 14). Pestco then filed its own motion for a partial summary judgment, as well as a memorandum of law in support of that motion ("Pestco's Supporting Memorandum") (Document No. 16) in which

it incorporated by reference the arguments made in its Opposition Memorandum.

2. Despite the court's disposition of the parties' respective motions, the matter of Pestco's counterclaim against Cincinnati for breach of contract related to unpaid defense costs remains for trial.

*uine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(a), (e)) (emphasis in *Matsushita* ). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable, or not significantly probative, summary judgment should be granted. *Id.* at 249–250, 106 S.Ct. 2505.

The court has reviewed the parties' respective motions and responses thereto in accordance with these standards. Based on the pleadings and evidence of record and the briefs filed in support of summary judgment and in opposition thereto, the court concludes that partial summary judgment should be entered in favor of Pestco.

### Background

The undisputed facts of record support the following scenario.

The CGL Policy issued by Cincinnati covered Pestco for the period May 1, 1996 to May 1, 1997, and the Umbrella Policy covered Pestco for the period May 1, 1996 to May 1, 1999. Relevant portions of the policies are attached as Exhibit C to Pestco's Opposition Memorandum.

The CGL Policy provides coverage for "advertising injury" caused by an offense committed during the policy period in the course of the insured advertising its goods, products or services. "Advertising injury" is defined in the CGL Policy as injury arising out of one or more of the following:

- Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
- Oral or written publication of material that violates a person's right of privacy;
- Misappropriation of advertising ideas or style of doing business; or
- Infringement of copyright, title or slogan.

The CGL Policy excludes coverage for certain kinds of advertising injury. The CGL Policy does not apply to advertising injury:

- Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
- Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
- Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or
- For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

The Umbrella Policy provides coverage for "advertising liability" for "occurrences" during the policy period in excess of the underlying insurance or for "occurrences" covered by the Umbrella Policy which are either excluded or not covered by the underlying insurance. As defined in the Umbrella Policy, advertising liability means "if committed or alleged to have been committed in any advertising, publicity article, broadcast or telecast and arising out of the insured's advertising activities, libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights

of privacy." The Umbrella Policy contains an exclusion for advertising liability arising out of: (1) failure to perform a contract; (2) infringement or misappropriation of a trademark, service mark or trade name, but that does not apply with respect to titles or slogans; (3) incorrect description of any article or commodity; or (4) mistake in advertised price.

California Scents initiated the Underlying Lawsuit against Pestco on April 20, 1999. As previously noted, California Scents asserted claims against Pestco for trade dress infringement, unfair competition under federal law and under California law and false advertising. The complaint in the Underlying Lawsuit ("the California Scents Complaint") is attached as Exhibit A to Pestco's Opposition Memorandum.

California Scents alleged that Pestco infringed upon its trade dress associated with the "pull top" aluminum can in which California Scents' air fresheners were sold. California Scents Complaint, ¶ 20. More specifically, California Scents claimed that Pestco misappropriated California Scents' trade dress by: marketing its air freshener product in pull top aluminum cans that were nearly identical to those used by California Scents; utilizing a color coded label around the can's perimeter and a color coded scratch and sniff label on the pull top lid similar to those used by California Scents; and using fragrance names confusingly similar to California Scents' names. *Id.,* ¶¶ 10, 18, 20. California Scents also alleged that Pestco infringed upon its trade dress associated with "counter top display boxes" and "free standing floor displays" that were designed to draw the consumer's attention by using displays nearly identical to those of California Scents. *Id.,* ¶¶ 11–12, 19–20. These allegations are the basis of California Scents' trade dress infringement cause of action and they also are incorporated by refer-

ence into the causes of action for unfair competition under federal and state law. California Scents' cause of action for false advertising involves allegations that Pestco has falsely claimed that it has been a corporation since 1946, instead of 1966, in order to increase sales of its own air freshener product and in order to injure California Scents' business. *Id.,* ¶¶ 35–37.

The California Scents Complaint is unclear as to when Pestco's alleged trade dress infringement began or when California Scents supposedly was injured by Pestco's alleged conduct. California Scents alleged that on or about February 20, 1995, it sent Pestco a cease and desist letter concerning the infringing nature of Pestco's trade dress. California Scents Complaint, ¶ 17. Pestco's counsel replied by letter dated March 10, 1995. *Id.* California Scents further alleged, however, that it did not subsequently observe evidence of Pestco's infringement for *several years.* *Id.* (emphasis added). Following Pestco's receipt of the cease and desist letter in 1995 (and several years later according to the foregoing allegation), Pestco then infringed on California Scents' ownership in its trade dress in the manner described above. *Id.,* ¶ 18. The California Scents Complaint does not set forth any allegations describing any infringement by Pestco prior to or contemporaneous with the date of the cease and desist letter, nor does it describe any infringement subsequent to that letter through the effective date of the Policies in 1996.

After being sued by California Scents, Pestco tendered the California Scents Complaint to Cincinnati. By letter dated June 20, 2000, a copy of which is attached as Exhibit B to Pestco's Opposition Memorandum, Cincinnati informed Pestco that it agreed to provide Pestco a defense with respect to the California Scents Complaint subject to a reservation of rights.

## Analysis

### I. Duty to Defend

The parties agree that the legal standards regarding Cincinnati's duty to defend are governed by Pennsylvania law. Under Pennsylvania law, an insurer's duty to defend is measured by the allegations in the underlying complaint. *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246 (1988). The allegations of the underlying complaint must be compared with the insurance contract to determine if coverage exists. The court must read the insurance policy as a whole and construe it according to the plain meaning of its terms. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). Where an ambiguity is found to exist, the policy provisions should be construed against the insurer as the drafter of the contract. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1093 (E.D.Pa.1994). A provision of an insurance policy is ambiguous if, considering it in the context of the entire policy, reasonable people would honestly differ as to its meaning. *Id.*

An insurer is obligated to defend its insured if the factual allegations of the underlying complaint against the insured state a claim which *potentially* would fall within the coverage of the policy. *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992). In analyzing and construing the underlying complaint, the factual allegations are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Id., citing Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959). Furthermore, if some of the allegations in the underlying complaint fall within the terms of coverage and others do not, the insurer is obligated to defend the entire action against the insured. *Britamco*, 845 F.Supp. at 1093–94.

Finally, policy exclusions are strictly construed against the insurer. *West American Ins. Co. v. Lindepuu*, 128 F.Supp.2d 220, 227 (E.D.Pa.2000). If an insurer seeks to deny coverage based upon an exclusion in the policy, it is the insurer's burden to demonstrate that the exclusion applies. *Id.*

### A. The Underlying Complaint's Trade Dress Infringement and Unfair Competition Claims

Cincinnati argues that it is not obligated to defend Pestco because Pestco's conduct, as alleged in the California Scents Complaint, does not constitute "advertising injury" under the CGL Policy or "advertising liability" under the Umbrella Policy. Conversely, Pestco maintains that Cincinnati's defense obligations are triggered under both Policies. For the reasons explained herein, the court finds that the allegations against Pestco in the California Scents Complaint do, in fact, constitute "advertising injury" and "advertising liability" under the respective Policies, thereby triggering Cincinnati's duty to defend.

### 1. The CGL Policy

As discussed above, "advertising injury", as defined in the CGL Policy, includes: (1) oral or written publication of material that slanders or libels a person or organization; (2) oral or written publication of material that violates a person's right of privacy; (3) misappropriation of advertising ideas or style of doing business; or (4) infringement of copyright, title or slogan. In this case, the third type of advertising injury is at issue. The parties disagree whether a claim for trade dress infringement constitutes "misappropriation of advertising ideas or style of doing business". This specific issue has not been

decided by Pennsylvania courts or by a federal court applying Pennsylvania law.

Cincinnati's position is that the definition of advertising injury does not specifically mention trade dress infringement, and that trade dress infringement does not fall under "misappropriation of advertising ideas or style of doing business". Cincinnati relies heavily on *Advance Watch Co., Ltd., v. Kemper National Ins. Co.*, 99 F.3d 795 (6th Cir.1996). In that case, the Sixth Circuit reviewed policy language similar to that at issue here and held that under Michigan law, "misappropriation of advertising ideas or style of doing business" covered under the "advertising injury" provision of a CGL policy did not extend to claims of trademark or trade dress infringement. *Advance Watch*, 99 F.3d at 802.

While the Third Circuit has not passed on the merits of *Advance Watch* under Pennsylvania law, it has noted the shortcomings of that decision. In *Frog, Switch & Manufacturing Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 747 (3d Cir.1999) [3], the court stated:

> *Advance Watch* has been sharply criticized for ignoring the real contours of intellectual property litigation, which often proceeds under a bewildering variety of different labels covering the same material facts.... It may also stand in some tension with our decision in *Granite State Insurance Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316 (3d Cir. 1995), which declares that insurance policies governed by Pennsylvania law will be interpreted according to a reasonable insured's understanding rather than the narrow legal meaning of policy terms.

This criticism of *Advance Watch* suggests that a claim of trade dress infringement could constitute advertising injury. That possibility was confirmed in *Green Machine Corp. v. Zurich–American Ins. Group*, 313 F.3d 837, 841 n. 6 (3d Cir. 2002), in which the court, citing *Frog, Switch,* noted that misappropriation of trade dress may constitute advertising injury.

Other courts have criticized the *Advance Watch* holding. *See, e.g., Hyman v. Nationwide Mutual Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir.2002) (noting that the majority of courts outside the Sixth and Eighth Circuits have rejected the reasoning of *Advance Watch* and citing cases); *Fidelity & Guaranty Ins. Co. v. Kocolene Marketing Corp.*, 2002 WL 977855 at *9 (S.D.Ind. March 26, 2002) ("*Advance Watch* is a minority view and is unpersuasive. The determination that 'advertising' is limited to verbal conduct ignores the reality of today's commercial world...."); *Adolfo House Distributing Corp. v. Travelers Property & Casualty Ins. Co.*, 165 F.Supp.2d 1332, 1339 (S.D.Fla.2001) (*Advance Watch's* "restrictive gloss on the concept of 'misappropriation' conflicts with the basic rules of insurance contract interpretation followed ... in multiple jurisdictions."); *Industrial Molding Corp. v. American Manufacturers Mutual Ins. Co.*, 17 F.Supp.2d 633, 639 (N.D.Tex.1998) (vacated due to parties' settlement) ("*Advance Watch* is the minority opinion on the issue").

Even state courts in Michigan, the state whose law the Sixth Circuit sought to apply in *Advance Watch*, have criticized the holding in that case. *See, e.g., Home–*

---

**3.** In *Frog, Switch,* trade dress infringement was not at issue. In that case, the insured sued its primary and excess liability insurers for breach of contract and bad faith for denying coverage for a competitor's claim that the insured misappropriated design drawings for dipper buckets and then advertised the buckets it produced using the drawings. The *Frog, Switch* court held that alleged unfair competition by misappropriating trade secrets was not included in the policy's advertising injury coverage.

*Owners Ins. Co. v. Thomas Lowe Ventures, Inc.,* 1998 WL 1856221 at *2 (Mich. Cir.Ct. August 27, 1998) ("trade dress infringement does constitute 'misappropriation of advertising ideas or style of doing business' because ... a common meaning of the word 'misappropriation' ... includes trade dress infringement"); *American States Ins. Co. v. Hayes Specialties, Inc.,* 1998 WL 1740968 at *3 (Mich.Cir.Ct. March 6, 1998) ("... the analysis and reasoning of the Sixth Circuit is not only unpersuasive and flawed, but demonstrates a lamentable lack of understanding and grasp of the law of trademark/trade dress").

This court agrees with the majority of courts that have considered the issue and have held that trade dress infringement is covered under the "misappropriation of advertising ideas or style of doing business" phrase of the advertising injury provision in the CGL Policy. *See Hyman,* 304 F.3d at 1188; *Kocolene,* 2002 WL 977855 at *9; *Adolfo,* 165 F.Supp.2d at 1339; *Industrial Molding,* 17 F.Supp.2d at 639; *Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co.,* 61 F.Supp.2d 611, 617 (S.D.Tex.1999); *Dogloo, Inc. v. Northern Ins. Co. of New York,* 907 F.Supp. 1383, 1390 (C.D.Cal. 1995); *Poof Toy Products, Inc. v. United States Fidelity & Guaranty Co.,* 891 F.Supp. 1228, 1233 (E.D.Mich.1995). Significantly, the phrase "misappropriation of advertising ideas or style of doing business", while not defined in the CGL Policy, has been defined by the Third Circuit. In *Green Machine,* 313 F.3d at 841, the court defined those terms as follows:

> Misappropriation of an advertising idea is the wrongful taking of an idea concerning the solicitation of business and customers. Misappropriation of a style of doing business is the wrongful taking of a company's plan for interacting with consumers and getting their business.

This court finds that trade dress, which is defined as "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics or even a particular sales technique," *Rose Art Industries, Inc. v. Swanson,* 235 F.3d 165, 171 (3d Cir.2000), falls within the definition of an advertising idea or a style of doing business. Because trade dress may encompass marketing or packaging design to draw attention to a product, it certainly may constitute an advertising idea or a style of doing business.

Interpreting the phrase "misappropriation of advertising ideas or style of doing business" to include a claim for trade dress infringement is a reasonable interpretation, finds support in the majority of decisions considering the issue, comports with an insured's reasonable expectations and favors the insured. Therefore, the court concludes that a claim for trade dress infringement constitutes advertising injury under the offense of "misappropriation of advertising ideas or style of doing business" in the CGL Policy.

### 2. Umbrella Policy

As noted, the Umbrella Policy provides coverage for "occurrences" in excess of the CGL Policy coverage or coverage for "occurrences" which are excluded by the CGL Policy but covered by the Umbrella Policy for "advertising liability". Cincinnati argues that it has no duty to defend under the Umbrella Policy for two reasons: (1) Pestco's alleged conduct set forth in the California Scents Complaint does not qualify as an "occurrence" within the meaning of the Umbrella Policy; and (2) even assuming an "occurrence", the Umbrella Policy excludes coverage for trade dress infringement. Pestco asserts that Cincinnati's defense obligation is triggered under the Umbrella Policy.

As an initial matter, the Umbrella Policy defines "occurrence" as "an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in ... advertising liability." Cincinnati argues that the allegations in the California Scents Complaint demonstrate that Pestco's conduct was intentional, and not accidental. Thus, there is no "occurrence" within the meaning of the Umbrella Policy and no coverage for Pestco's alleged trade dress infringement.

 Cincinnati's argument lacks merit. Cincinnati's duty to defend under the Umbrella Policy does not depend upon Pestco's state of mind as alleged in the California Scents Complaint. According to the Third Circuit in *Frog, Switch:*

> ... [T]he insured should not be dependent on the underlying plaintiff's pleading on state of mind, which may be inapt. When a complaint alleges intentional conduct (which insurance policies exclude from coverage) but might be amended to allege some other state of mind that would both trigger coverage and show liability, then the complaint should be treated as setting forth facts that potentially justify coverage.

*Frog, Switch,* 193 F.3d at 746 n. 2. The court agrees with Pestco that intentional conduct is not a necessary element of a trade dress infringement claim. *See Blue Bell Bio–Medical v. Cin–Bad. Inc.,* 864 F.2d 1253, 1258 (5th Cir.1989). In other words, allegations of negligence or recklessness would be sufficient to make Pestco's alleged trade dress infringement actionable.[4] Therefore, any allegations in the California Scents Complaint that Pestco acted intentionally do not relieve Cincinnati of its duty to defend. Such a result especially is appropriate here where, in some instances, it is alleged that Pestco's conduct was intentional, *see* California Scents Complaint ¶¶ 18, 19, and, in other instances, it is alleged that Pestco acted knowingly. *Id.* ¶ 17.

 Even assuming an "occurrence", Cincinnati next argues that the Umbrella Policy excludes coverage for trade dress infringement. On this point, Cincinnati relies on a provision that excludes coverage for, *inter alia,* "infringement or misappropriation of a trademark, service mark or trade name." Plainly, this exclusion does not mention trade dress. Nevertheless, Cincinnati maintains that trade dress infringement and trademark infringement are synonymous. The court disagrees. Trade dress refers to features

4. Even assuming *arguendo* that this was not the case, Cincinnati still would have a duty to defend arising out of the unfair competition claims in the California Scents Complaint. Cincinnati's duty to defend would not be extinguished because the Umbrella Policy is ambiguous on the following point: the Policy grants coverage for "advertising liability", which it defines as a series of acts that involve intentional conduct, including unfair competition. That very same coverage is then eviscerated by the Umbrella Policy's exclusion for intentional conduct. Courts that have analyzed this inconsistency have held the exclusionary language to be unenforceable. *See Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.,* 832 F.2d 1037, 1045 (7th Cir.1987) (stating that an advertising offense is defined "to include many torts that characteristically require intent, ... such as ... unfair competition. This language is plain and unambiguous and must be given its ordinary meaning. The ambiguity arises, however, when one looks at the definition of 'occurrence', which states that only unintentional acts from the standpoint of the insured are covered ... therefore[] this ambiguity must be resolved against [the insurer]."); *Hurst–Rosche Engineers, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1345–46 (7th Cir.1995) (holding that the insurance policy's definitions of covered personal injuries and "occurrence" are ambiguous and inconsistent and resolving ambiguity in favor of the insured).

that constitute the total image or overall appearance of a product or even a particular sales technique, *see Rose Art,* 235 F.3d at 171, whereas a trademark is a distinctive mark or emblem that serves to identify a product with a specific producer. Clearly, the two are distinct, and trade dress cannot be read into the Umbrella Policy exclusion for trademark infringement. *See Lindepuu,* 128 F.Supp.2d at 227 (holding that policy exclusions are to be read narrowly and construed against the insurer). For these reasons, the Umbrella Policy does not exclude coverage for a claim of trade dress infringement.

B. *First Publication Exclusion*

 The CGL Policy excludes coverage for advertising injury that arises out of "oral or written publication of material whose first publication took place before the beginning of the policy period." Pursuant to this so-called first publication exclusion, Cincinnati claims that it is not obligated to defend Pestco because the allegations in the California Scents Complaint establish that Pestco's trade dress infringement occurred prior to the inception of the CGL Policy period. Pestco's position is that the first publication exclusion does not apply to trade dress infringement claims, which do not involve "oral or written publication of material" and, moreover, the first publication exclusion is ambiguous.

The court acknowledges the existence of a split of authority on whether the first publication exclusion applies to all four definitional subparts of "advertising injury" or only to libel, slander and invasion of privacy; in other words, those offenses that arise out of oral or written publication of material. *Compare Adolfo House Distributing Corp. v. Travelers Property & Casualty Ins. Co.,* 165 F.Supp.2d 1332, 1342 (S.D.Fla.2001) (holding that prior publication exclusion does not apply to non-tortious injuries; the fact that "oral

or written publication" language in the first publication exclusion mimics coverage provisions for tortious advertising injuries suggests that the exclusion was not intended to apply to misappropriation or infringement advertising injuries); *Irons Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260, 1264 (E.D.Mich. 1993) (same) *with Maxtech Holding, Inc. v. Federal Ins. Co.,* 1999 WL 1038281 (9th Cir.1999) (language is not ambiguous because the exception follows the words "advertising injury" in quotes, and since advertising injury is defined elsewhere the exception should apply to all types of advertising injury); *Applied Bolting Technology Products, Inc. v. United States Fidelity & Guaranty Co.,* 942 F.Supp. 1029, 1036–37 (E.D.Pa.1996) (same, applying Vermont law). At the very least, this conflict and lack of any controlling Third Circuit authority suggests that the first publication exclusion is capable of two reasonable interpretations and is by definition ambiguous, thus requiring that it be interpreted against Cincinnati and in favor of Pestco. *See Maddox v. St. Paul Fire & Marine Ins. Co.,* 179 F.Supp.2d 527, 530 (W.D.Pa.2001) (holding that first publication exclusion is ambiguous because it is reasonably susceptible to multiple interpretations).

This outcome particularly is appropriate here because the allegations in the California Scents Complaint are unclear as to exactly when Pestco's alleged trade dress infringement began or when California Scents supposedly was injured by Pestco's alleged conduct. California Scents alleged that on or about February 20, 1995, it sent Pestco a cease and desist letter concerning the infringing nature of Pestco's trade dress. California Scents Complaint, ¶ 17. Pestco's counsel replied by letter dated March 10, 1995. *Id.* There are no allegations regarding the nature and content of these letters that might shed light on Pest-

co's conduct. It is alleged, however, that California Scents did not subsequently observe evidence of Pestco's infringement for *several years*. *Id.* (emphasis added). Following Pestco's receipt of the cease and desist letter (and apparently several years after 1995 according to the foregoing allegation), Pestco then infringed on California Scents' trade dress. *Id.* ¶ 18. The California Scents Complaint is devoid of allegations describing infringing conduct by Pestco prior to the 1995 cease and desist letter,[5] or subsequent to the letter through the effective date of the CGL Policy in May 1996. While one may assume that the cease and desist letter was prompted by something Pestco did to concern California Scents, it would be inappropriate to draw the adverse inference against Pestco that it engaged in infringing conduct at some point prior to the effective date of the CGL Policy. *See Biborosch*, 603 A.2d at 1052 (allegations in underlying complaint are to be liberally construed with all doubts as to whether a claim may fall within coverage to be resolved in favor of insured). Indeed, it is reasonable to conclude that any concerns California Scents may have expressed in the February 1995 letter were no longer an issue after Pestco's March 1995 response. This is especially true because California Scents did not initiate the Underlying Lawsuit against Pestco until April 1999.

This court therefore concludes that the first publication exclusion does not extinguish Cincinnati's duty to defend because: (1) the allegations in the California Scents Complaint must be construed liberally in favor of Pestco; (2) the first publication exclusion has been found to be ambiguous; and (3) policy exclusions are to be strictly construed against the insurer.

## C. *Known Loss Doctrine*

Pursuant to the known loss doctrine, Cincinnati argues that it does not owe a duty to defend Pestco because Pestco's alleged trade dress infringement began prior to the effective dates of the CGL and Umbrella Policies. Pestco's position is that the known loss doctrine does not afford a basis for terminating Cincinnati's defense obligations.[6]

The known loss doctrine is an extra-contractual defense "that derives from the fundamental requirement of fortuity in insurance law." *Rohm & Haas Co. v. Continental Casualty Co.*, 732 A.2d 1236, 1256 (Pa.Super.1999), *quoting, Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 517 (3d Cir.1997). In *Rohm & Haas*, which tested the known loss doctrine in Pennsylvania for the first time, the superior court observed:

Essentially, the doctrine provides that one may not obtain insurance for a loss

**5.** In support of its contention that the first publication exclusion applies here, Cincinnati relied upon an allegation in the California Scents Complaint that Pestco and certain unnamed Doe defendants "combined, conspired and agreed together to infringe upon Scents' trade dress" since in or about 1993. California Scents Complaint, ¶ 27. Read in conjunction with the allegations that California Scents did not observe evidence of Pestco's infringement for several years following the cease and desist letter, this allegation is not sufficiently clear to invoke the first publication exclusion. Significantly, the allegation does not describe any actual infringing con- duct by Pestco. It broadly refers to alleged agreement between Pestco and others to infringe Scents' trade dress.

**6.** According to Pestco, Cincinnati raised the known loss doctrine for the first time in its summary judgment motion. A review of Cincinnati's Complaint for Declaratory Judgment (Document No. 1) indicates that Cincinnati raised, or attempted to raise, the known loss doctrine as a basis for defeating its duty to defend by stating in paragraph 23 that "the alleged offenses did not occur during the policy periods . . . ."

that either has already taken place or is in progress. As we have recognized, the rule is based on the realization that the purpose of insurance is to protect insureds against unknown risks. State courts are divided as to the scope of the known loss doctrine. Some have construed it quite narrowly, barring coverage only when the insured knew of certainty of damages and liability. Others have refused to find coverage when the insured was substantially aware of a risk of loss.

*Id.* (citations and quotations omitted). The *Rohm & Haas* court concluded that the known loss doctrine should be broadly interpreted, meaning that the doctrine will apply where an insured has knowledge which reasonably shows that it was, or should be, aware of a likely exposure to losses which would reach the level of coverage. *Rohm & Haas,* 732 A.2d at 1258.

Pestco pointed out that the standard for applying the known loss doctrine as set forth in *Rohm & Haas* dealt with the indemnity context, and that no Pennsylvania case has considered whether that same standard would apply in the duty to defend context. According to Pestco, the relevant inquiry in the duty to defend context is a more narrow construction—that the "prospect of a lawsuit against the insured was or should have been so evident to the policyholder that the insurer's obligation to provide a defense could not truly be said to have been 'contingent' when the policy incepted." *See* Pestco's Opposition Memorandum at 22 (citing 1 Allan H. Windt, *Insurance Claims and Disputes* § 6:46 (4th Ed.2001)).

█ In the instant case, the known loss doctrine does not extinguish Cincinnati's duty to defend, even under the broader application of the known loss doctrine endorsed in *Rohm & Haas*. To invoke the doctrine, Cincinnati relies on the allegations in the California Scents Complaint

that California Scents sent Pestco a cease and desist letter and Pestco responded to the letter. California Scents Complaint, ¶ 17. Based on that, Cincinnati asserts that Pestco had "knowledge that its infringing conduct could lead to legal liability." Pestco's Brief in Support of Motion for Summary Judgment (Document No. 11) at 14. As discussed above in the context of the first publication exclusion, the allegations surrounding California Scents cease and desist letter are unclear, in light of the fact that California Scents further alleged that it subsequently did not observe evidence of infringement for several years, *see* California Scents Complaint, ¶ 17, it was only following Pestco's receipt of the letter (i.e., several years after 1995) that Pestco allegedly infringed California Scents' trade dress, *id.,* ¶ 18, and California Scents did not initiate the Underlying Lawsuit against Pestco until April 1999.

Therefore, the allegations of the California Scents Complaint do not conclusively disclose that prior to the effective date of the CGL and Umbrella Policies, Pestco had knowledge which reasonably showed that it was, or should have been, aware of a likely claim. There are no allegations describing the content of the cease and desist letter that would shed light on Pestco's conduct, nor are there any other allegations describing infringing conduct by Pestco prior to, contemporaneous with or subsequent to the date of the cease and desist letter and leading up the effective date of the CGL and Umbrella Policies. Thus, it would have been reasonable for Pestco to assume that whatever concern California Scents raised in the February 1995 letter was no longer an issue after Pestco's March 1995 response. In light of the foregoing, it would be improper for the court to rely on the unclear allegations in the California Scents Complaint to invoke the known loss doctrine in this case.

### D. *False Advertising Claim*

■ California Scents also asserted a claim against Pestco in the Underlying Lawsuit for false advertising. The false advertising claim involves allegations that Pestco misled consumers by falsely claiming in connection with the sale of its air freshner product that it has been a corporation since 1946, instead of 1966. California Scents Complaint, ¶ 35.

Cincinnati argues that the false advertising claim does not qualify as "advertising injury" under the CGL Policy and, even if it does, coverage is precluded by the exclusion for advertising injury that arises out of oral or written publication of material done at the insured's direction with knowledge of its falsity. Cincinnati further argues that the false advertising claim does not qualify as an "occurrence" under the Umbrella Policy, thus Cincinnati has no duty to defend. Pestco counters that the "knowingly false" exclusion in the CGL Policy does not apply because policy exclusions are to be read narrowly. Pestco further maintains that Cincinnati's "occurrence" argument in connection with the Umbrella Policy fails because the definition of "occurrence" and the definition of "advertising liability" create an ambiguity which must be resolved in favor of Pestco. After reviewing the false advertising claim in the California Scents Complaint along with the relevant language of each Policy, the court finds that the false advertising claim does not qualify as "advertising injury" under the CGL Policy or "advertising liability" under the Umbrella Policy.

With respect to the CGL Policy, the false advertising claim, which involves allegations of Pestco falsely representing its year of incorporation, does not fall under any of the four subparts of the definition of "advertising injury". It does not involve oral or written publication of material that slanders, libels or disparages a person or organization or violates a person's right of privacy, nor does it involve misappropriation of advertising ideas or style of doing business or infringement of copyright, title or slogan.

■ With respect to the Umbrella Policy, even if Pestco's alleged false advertising constitutes an "occurrence", it does not satisfy the definition of "advertising liability" under that Policy.[7] The allegation that Pestco falsely represented its date of incorporation does not fall under the "advertising liability" definition of "libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy."

For these reasons, the CGL and Umbrella Policies do not afford coverage for the false advertising claim. However, Cincinnati is still obligated to defend Pestco because the other claims in the Underlying Lawsuit are covered. *See Britamco*, 845 F.Supp. at 1093–94 (if some of the allegations in the underlying complaint fall within the terms of coverage and others do not, the insurer is obligated to defend the entire action against its insured).

### II. *Duty to Indemnify*

■ Pestco contends that Cincinnati's request for declaratory relief regarding its duty to indemnify Pestco is not ripe for adjudication. The court agrees. As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action. *Home Ins. Co. v.*

---

**7.** The Umbrella Policy provides coverage for "occurrences" in excess of the underlying insurance or for "occurrences" covered by the Umbrella Policy which are either excluded or not covered by the underlying insurance because of "advertising liability."

*Law Offices of Jonathan DeYoung,* 107 F.Supp.2d 647, 650 (E.D.Pa.2000); *see also Home Ins. Co. v. Perlberger,* 900 F.Supp. 768, 773 (E.D.Pa.1995) (noting that the adversity of the party's interests as to the duty to indemnify is not complete until after resolution of the underlying litigation, when it is clear whether the insured can assert an indemnity claim against the insurer). Here, the court in the Underlying Lawsuit has not found Pestco liable to California Scents for any monetary amount. *See* Affidavit of Richard Ejzak, attached as Exhibit A to Pestco's Supporting Memorandum. For this reason, Cincinnati's motion for summary judgment on its declaratory judgment claim regarding its duty to indemnify will be denied, without prejudice.

An appropriate order will follow.